### 7844

### BUIST v. WILLIAMS.

1. THE TRUST DEED in question construed to convey the entire estate in trust for the benefit of the three grandchildren for life with remainder in fee to their issue, if any, then living, and if no such issue, then over to the children named.

2. TRUSTS—SUBROGATION.—The rule that a *cestui que trust* has the option to follow the trust fund into a new investment and claim the profits or hold the trustee liable does not apply where the fund is used for removing a lien, but in such case the trust fund should be subrogated to the lien removed. This is practically accomplished where the *cestui que trust* becomes surety on the trustee's bond and secures it by his mortgage on the lands under lien.

3. ACCOUNTING.—WHERE A TRUSTEE by investing the trust fund in lands commits a technical breach of the trust, but is absolved by the finding of the Court that he acted from an honest motive, he should be only charged with the profits made and the trust fund expended and not with the present value of land bought and sold. Nor should he be charged with the present value of lands passing to him under the trust deed which he has sold under authority and discretion conferred by trust deed.

Before ALDRICH, J., Greenville, February, 1910. Affirmed.                                    •

Action by Eliza F. Buist against J. Hudson Williams, William A. Williams *et al.* The Circuit decree is:

"This action was instituted in the Court of Common Pleas for Greenville county on July 9th, 1907, for the purpose of substituting other real estate for that covered by certain mortgages executed by the plaintiff, Eliza F. Buist, on February 7th, 1877, and December 18th, 1897, respectively, which mortgages were given to the probate judge for Greenville county to secure two bonds of Hugh B. Buist, trustee, upon which the plaintiff was surety. The real estate covered by the mortgages is property near the city of Greenville, which the plaintiff desired to cut up into lots for sale; she offered to substitute for it certain other real estate which she claimed was amply sufficient to secure said bonds.

"The defendants, other than Hugh B. Buist, by their answer resisted the proposed substitution; and from what was intended by the plaintiff as simply a friendly suit for a change of securities, the suit quickly developed into a contest over the proper accounting by the trustee of the trust fund committed to him.

"The cause was referred to J. W. Gray, master of Greenville county, to hear and determine all issues of law and fact. The master took a mass of testimony and on April 6th, 1908, filed his report, ascertaining that the *corpus* of the trust fund in the hands of the trustee was $6,832.43, and that in addition thereto the *cestuis,* J. Hudson Williams and William A. Williams, were entitled to 23.35 per cent. of the real estate proposed to be released, by reason of the fact that trust funds in that proportion of the original cost were traced as part of the purchase money paid for it.

"The plaintiff and the defendant, Hugh B. Buist, excepted to the master's report.

"On November 14th, 1908, the plaintiff served upon the defendants notice of motion to amend her complaint in certain particulars, which motion was allowed by the Court, and from the order the defendants, J. Hudson Williams and William A. Williams, appealed to the Supreme Court,

which later affirmed the order of Judge DeVore permitting the amendment. Subsequently thereto the master held another reference at which he took certain testimony bearing upon the amended complaint, and filed his report in which he sustained the contention of the defendants as to the construction of the trust deed. To his report the plaintiff and the defendant, Hugh B. Buist, have filed exceptions.

"The cause comes before me upon the exceptions of all parties to the first report filed by the master and upon the exceptions filed by the plaintiff, Eliza F. Buist, and the defendant, Hugh B. Buist, and also the exceptions of the defendants, Williams, to the last report filed by the master.

"It appears from the testimony that on August 26th, 1858, John H. Williams, of Newberry county, conveyed certain real estate situated in Abbeville county, consisting of two thousand fifty-seven (2,057) acres, to James W. Williams upon the following trust:

"'In trust for the sole and separate use of my aforesaid grandchildren for and during their natural lives, and at their respective deaths their respective shares of said land, or the proceeds thereof if sold, shall be divided among their respective issue living at their respective deaths according to the provisions of the Acts of the General Assembly of this State for the distribution of intestate estates, but should either of my said grandchildren die leaving no issue living at the time of his or her death, then in that event the share of such grandchild so dying shall go to the survivor or survivors of my said grandchildren, to be held by the said James W. Williams, as trustee, upon the same terms and limitations that he holds the original shares; and in case all three of my said grandchildren should die without leaving issue surviving them, then and in that case the said land, or the proceeds thereof if sold, shall be equally divided among my four children, James W. Williams, Robert G. Williams, Elizabeth C. Williams and Theresa

O. Williams, the child or children of a deceased child taking the share its or their parent would have taken if living at the happening of the contingency last mentioned.' During the year 1871 said John H. Williams conveyed to said James W. Williams another tract of land upon the same trusts and limitations.

"The grandchildren referred to were Martha E. Williams, Eliza Williams and William A. Williams. Martha E. Williams died many years ago unmarried and childless, and her interest in the trust estate devolved upon the other two, Eliza F. Williams and William A. Williams.

"On January 31st, 1877, Hugh B. Buist was, by order of Court, substituted as trustee of Eliza F., Buist (formerly Williams) in the stead of James W. Williams, the original trustee, and gave bond to the probate judge of Greenville county in the sum of nine thousand dollars, dated February 7th, 1877, which bond was signed by Eliza F. Buist as surety and was secured further by the mortgage of Eliza F. Buist upon the 82 1-10 acres described in the complaint of same date. December, 1897, H. B. Buist having sold the Burgess land, executed to the probate judge his bond in the penal sum of four thousand, nine hundred and twenty-eight dollars as such trustee; and said Eliza F. Buist signed said bond as a surety and executed and delivered to the probate judge of Greenville county on said eighty-two and one-tenth acre tract of land to secure the same, a mortgage of same date. The proceeding under which H. B. Buist was substituted as trustee effected a division of the trust estate between Eliza F. Buist and W. A. Williams, the original trustee, James W. Williams, continuing to act as trustee for W. A. Williams until his majority, at which time he brought suit and secured a settlement with his trustee. W. A. Williams died about 1888, and his interest in the trust estate devolved upon his two sons, the defendants, J. Hudson Williams and William A. Williams. This share of the trust estate is not involved at all in this litigation.

The contest is over the ultimate disposition of the share of Eliza F. Buist, who it is admitted will, in the nature of things, die childless.

"Hugh B. Buist, as trustee for Eliza F. Buist, received from various sources the gross amount of $7,084.60, which after deducting commissions for receiving and other proper allowances leaves the net sum of six thousand seven hundred and fifty-seven and 50-100 dollars, and is charged by the master with $744.03 profits on the Piney Mountain property, which had been bought by him with trust funds and afterwards sold, total $7,501.53. This represents the *corpus* of the trust estate, the issues and profits of which have been paid annually to the life tenant, Eliza F. Buist, as she was entitled thereto.

"Prior to his appointment as trustee of Eliza F. Buist, Hugh B. Buist had intermarried with her, and on January 7th, 1873, had been appointed guardian of her person and estate, she being a minor. On July 12th, 1873, Hugh B. Buist, as guardian of Eliza F. Buist, purchased the 82 1-10 acres, described in the complaint, from the devisees of John H. Marshall, at the price of $4,150, $1,900 of which he paid in cash from the funds of the guardianship estate, and secured the remainder, $2,250, by his note and mortgage of the property purchased; he taking title to himself as guardian of Eliza F. Buist and executing the note and mortgage in the same capacity. On October 8th, 1875, Hugh B. Buist, as guardian, had a final settlement with his ward, Eliza F. Buist, and on that date secured an order of discharge from the probate court of Greenville county.

"On February 7th, 1877, the day he qualified as trustee of Eliza F. Buist, Hugh B. Buist, as guardian, conveyed to Eliza F. Buist the 82 1-10 acres conveyed by the devisee of John H. Marshall to him as guardian of Eliza F. Buist; and on the same date Eliza F. Buist mortgaged the same to the probate judge of Greenville county to secure the bond of Hugh B. Buist, trustee. After the execution of

the note and mortgage by Hugh B. Buist, guardian, to S. S. Marshall, administrator, for $2,250, various payments were made upon the same by Hugh B. Buist, guardian, until February 8th, 1877, the day after he conveyed the property to Eliza F. Buist, when by calculation it was ascertained that there were due upon the same $318.70, which Hugh B. Buist then paid to the mortgagee; and on March 30th, 1877, the mortgage itself was marked satisfied, but the record was not so marked until March 30th, 1878, a year later. The balance of $318.70 paid by Buist to satisfy the mortgage on February 8th, 1877, is admitted to have been a part of the trust fund of the Eliza F. Buist trust, as it appears of that date in the returns of Hugh B. Buist, trustee, in the probate office. The other payments made by Buist upon the mortgage were guardianship funds except the sum of $540, which had been obtained from Mrs. Kittie Williams, mother of Mrs. Buist, in 1874. In Hugh B. Buist's return, as trustee, to the probate court, appears this item: '1877, May        . By amount paid Mrs. K. F. Williams, being money she paid on the place we live at, $540.'

"John H. Williams, the grantor of the trust deed, died many years ago, leaving as his own heirs at law his sons, James W. Williams and R. G. Williams; a grandson, N. B. Davenport; a grandson, Emmett Williams; his grandchildren, Martha E. Williams, Eliza F. Williams and William A. Williams; the daughters having both died unmarried and childless. W. A. Williams died leaving as his heirs at law his widow, Willie C. Williams, and his two sons, J. Hudson Williams and William A. Williams.

"The defendants, J. Hudson Williams and W. A. Williams, Jr., sons of W. A. Williams, one of the original *cestuis que trust,* have set up the claim that, as the $540 and $318.70 payments made by Hugh B. Buist upon the Marshall mortgage were obtained by him from the trust estate, they are entitled as remaindermen to such propor-

tion of the 82 1-10 acre tract as such payments bear to the original purchase price. The master in his report has sustained their contention and has found that the trust estate consists of $6,947.10, the amount received by Hugh B. Buist from Williams, trustee, plus $744.03, profits on the Piney Mountain land, $7,691.13, less $858.70, payments out of trust fund, as above stated, of $540 and $318.70, net $6,832.43; he also finds that they are entitled to 23.35 per cent. of the 82 1-10 acres by reason of the alleged diversion.

"The plaintiff and the defendant, Hugh B. Buist, do not complain of the findings of the master as to the charge for profits on the Piney Mountain land; but they do object to his findings that the *cestuis que trustent* are entitled to any part of the land; they insist that the *corpus* is $6,757.50, plus $744.03, $7,501.53, and that only; they contend, also, that the trust fund in the hands of the trustee upon the death of the life tenant, Eliza F. Buist, becomes a resulting trust, reverting to the estate of John H. Williams and descending to his heirs.

"There are, therefore, two main questions to be decided by me. First. The proper construction of the trust deed; and, Second. The liability of the plaintiff, Eliza F. Buist, to account to the defendants, J. Hudson Williams and William A. Williams, for a proportionate part of the 82 1-10 acres.

"As to the first question, I adopt the conclusion and reasoning of the master and hold that upon the death of Eliza F. Buist, childless, the *corpus* of the trust estate in the hands of the trustees will vest in the defendants, J. Hudson Williams and William A. Williams, or in the survivor of them.

"Upon the second question I do not agree with the master, and hold that he erred in finding that the defendants are entitled to any interest at all in the 82 1-10 acre tract of land, other than as security for the trust estate.

The effort is not simply to charge Mrs. Buist's property with the diverted funds, but to hold her, as a *quasi* trustee, accountable to the trust estate for an interest in her land; this cannot be done unless it be made to appear: (1) That the trustee has committed a breach of trust in investing the trust funds in the manner complained of; (2) That the trust fund actually went into the property in which an interest is claimed; (3) That Mrs. Buist was a party to the breach of trust, or that she was a voluntary donee of the fund diverted.

"The interest in the land must be fixed, if at all, through the conduct of Mrs. Buist, which in law must constitute her a *quasi* trustee; it cannot be done by showing a breach of trust by the trustee; it cannot be worked out through his conduct as trustee alone. It must be worked out on the ground that Mrs. Buist is a *quasi* trustee.

"The first step in this process is to show that the trustee, in making the payments of $318.70 on February 8th, 1877, and $540 in May, 1877, committed a breach of trust; for if there has been no breach of trust on the part of the trustee, to the knowledge or voluntary benefit cf Mrs. Buist, there can be no relation of trustee on the part of Mrs. Buist to the estate; nothing, of course, to charge her as trustee if the trustee has only done what he had a right to do and what he should have done.

"Considering, then, these two payments separately, attention is first directed to that of $318.70 on February 8th, 1877.

"When Hugh B. Buist qualified as trustee, on February 7th, 1877, he signed a bond to the probate judge of Greenville county for $9,000, and Mrs. Buist signed the bond as his surety. The bond was to be secured in such manner as might be satisfactory to the probate judge; it was so provided in the order substituting Hugh B. Buist for James W. Williams as trustee. To further secure the bond Mrs. Buist, the life tenant of the trust fund, executed her mort-

gage upon the home place, and the bond thus secured was accepted by the probate judge.

"At this time there was $318.70 due by Mrs. Buist on the Marshall mortgage, which covered the home place and was, of course, senior to the mortgage which she gave to secure the bond of the trustee. On February 8th, 1877, the day after Mrs. Buist had mortgaged the home place to secure the bond, the trustee, out of trust funds, paid off the Marshall mortgage; the balance due amounting to $318.70, had the mortgage itself marked satisfied on March 30th, 1877, and the record entered March 30th, 1878, a year later.

"How this constituted a breach of trust on the part of the trustee it is difficult to conceive. Mrs. Buist was entitled to the income of the trust fund during her life, and the trust has had the benefit all these years of the satisfaction of the mortgage and the stopping of interest upon it. She had already given her mortgage to secure the trustee's bond, and the $318.70 was fully protected by it. How well it has been protected is shown by the effort of the defendants to renounce the security afforded and claim the land, because it is worth more than the fund. The payment of the Marshall mortgage increased to that extent the value of the security to the trustee's bond. There was no secrecy about the transaction; it appears boldly upon the returns of the trustee filed in the probate office. There has been no loss, nor danger of loss, from the time the payment was made. The transaction amounted simply to a loan by the trustee to Mrs. Buist, amply secured by her mortgage, so far as the *cestuis que trustent* were concerned. From the standpoint of business, sensible action and results, what better investment of this $318,70 could the trustee have made? If he had loaned it to some one else, and taken a mortgage, he would have collected the interest and paid it to Mrs. Buist, and she would have paid it to the mortgagee of the Marshall mortgage. To avoid this unnecessary circumambulation the trustee pays off the

mortgage, relieves the home place of the mortgage, increases the security to his bond, and holds the mortgage on the home place as security for the loan. While the Buist mortgage is not directly to the trustee, it needs no authority to show that upon his default this mortgage would enure to the benefit of the *cestuis que trustent.*

"In *Wallace* v. *McCullough,* 1 Rich. Eq. 426, a marriage settlement gave the husband the interest and profits of certain property which belonged to his intended wife during coverture. He received in payment of certain notes certain slaves; upon the sale by him of some of the slaves, and his threat to remove the others from the State, the executor of the trustee under the marriage settlement filed a bill claiming the negroes as part of the trust estate. The Court held as follows: 'Nor can the Court attach a trust upon the negroes, received in lieu of the money, to any greater extent than to declare a lien on them and the rest of his property, until the defendant shall repay the money to the executors of the trustee, or secure the payment of the same, by instruments to be approved by the commissioners, and by the Court upon the same being reported. The defendant being entitled to the interest and profit of the fund, was entitled to borrow it from the trustee upon proper security, and make the most profitable use of it within his power. Resolved into its elements, the transaction which took place was substantially this, that the defendant borrow'ed the money from the trustee and with it bought the negroes from Wallace and Parham, and is entitled to the benefit of his bargain. His only obligation is to replace the money; but until he does this, or secures it being done, the negroes purchased must represent the fund employed.'

"As to the $540 payment in May, 1877. This stands upon a different footing from the other payment. Prior to February 8th, 1877, at which time there was $518.70 due upon the Marshall mortgage, it appears that Mrs. Kittie F. Williams loaned, or advanced, or furnished, the $540

to Eliza F. Buist, with which she made a payment of that amount upon the Marshall mortgage. In May, 1877, the trustee paid Mrs. Williams out of the trust fund $540, to reimburse her for the money which she had furnished to Mrs. Buist. He so entered the payment as a credit item in his returns as trustee to the probate judge. It is now claimed by the defendants that this was a payment upon the purchase money of the 82 1-10 acre tract of land and gives them a right to follow it into a proportionate quantity of the land itself. The money was furnished by Mrs. Williams long before the trustee was appointed and went to discharge the mortgage upon Mrs. Buist's property to the extent of the payment made them by Mrs. Buist. At the time it was paid back by the trustee to Mrs. Williams the Marshall mortgage had been paid in full and marked satisfied. At most, the advance by Mrs. Williams was a loan to Mrs. Buist, and when it was paid back to her the transaction amounted to a liquidation by the trustee of a debt due by Mrs. Buist to Mrs. Williams, which, at the time it was created, had no reference to the trust estate. Conceding that the payment to Mrs. Williams was a breach of trust, the most that the defendants can claim is that they thereby became subrogated to the rights of Mrs. Williams against Mrs. Buist, which, in the most favorable view of the case, will be the right of an equitable assignee to that much of the Marshall mortgage. This the defendants already have in the mortage which Mrs. Buist has given·to secure the trustee's bond.

"The testimony, however, does not show that Mrs. Buist was in any way a party to this alleged breach of trust, or that she ever knew of the payment by the trustee of her debt to Mrs. Williams. If not, it amounted simply to a voluntary payment by the trustee, for which Mrs. Buist is not in any way accountable.

"But if Mrs. Buist knew of it, and directed the payment to her mother, in the situation of the parties it did not con-

stitute a breach of trust. It was right that Mrs. Buist should pay her debts, and it was right that the trustee should aid her in this commendable purpose; it was right that the trustee should invest the trust fund, and Mrs. Buist's mortgage securing the bond of the trustee was ample security for this constructive loan, as the results have amply shown.

"Conceding, however, for the sake of argument, that, in the two payments under consideration, Buist, as trustee, committed a breach of trust; that Mrs. Buist was the conscious or voluntary beneficiary of such breach, and that the payments were in satisfaction *pro tanto* of the purchase money mortgage, as to these payments the only relief which the *cestuis que trustent* are entitled to is to hold the home place as security for such sums; and this they already have in the mortgage given by Mrs. Buist to secure the bond of the trustee. If the trustee committed a breach of trust, and Mrs. Buist was the conscious or voluntary beneficiary towards the satisfaction *pro tanto* of the Marshall mortgage, then she is considered a trustee of this fund and her liability is determined in the same manner as if Buist, the trustee, had paid off out of trust funds a balance due on a mortgage existing at the time he became trustee. Would it be a reasonable proposition that a trustee, who, years before his appointment, had purchased land, must let the *cestuis que trustent* into part ownership of the land because he had paid off a balance due upon the mortgage with trust funds? When Mrs. Buist became *quasi* trustee (according to the contention of the defendants) she was the owner of the 82 1-10 acre tract of land. It had been bought by her guardian for her long before his appointment as trustee; he had made a good bargain for his ward, and his ward is entitled to all of the benefits of that bargain. These benefits accrued before the acts were committed which are claimed to be sufficient to constitute her a trustee. Is she to lose these benefits, or a proportionate part of them,

because a part of the trust funds have gone towards satisfying a mortgage which was upon the land before the trusteeship could have been created? Would not the ends of justice be fully met by holding the land as security for the trust funds which thus indirectly entered into it? If the payment of the trust funds had been absolutely necessary to save the entire property from sacrifice, through foreclosure of the mortgage, there might be some reason in awarding to the trust estate an interest in the whole, which would have been entirely lost but for such diversion. But there is no such showing in this case. For all that appears to the contrary, the mortgagee, who had waited four years, would not have forced the property to sale for a small balance due upon the mortgage. There cannot be claimed for the trust fund any greater interest than was actually accrued by reason of the diversion. The case might be different if a trustee, who could not buy otherwise, purchased a tract of land with trust funds and took title in his own name. There the trust fund would have enabled the trustee to acquire the whole title, and without which he would have had nothing. But the case is different where the trustee has already secured a valuable bargain and has paid off a small balance due on the purchase price with trust funds. That Mrs. Buist acquired a bargain is best shown by the effort of the defendants to hold an interest in the land rather than be satisfied with the amount of the trust funds. What right then have the *cestuis que trustent* to secure a proportionate share in Mrs. Buist's bargain, acquired four years before the trust relation was created?

"It will be noticed that in the case of *Wallace* v. *McCullough, supra,* the person sought to be held to the liability of a trustee was not the trustee named in the deed, but the life tenant of the trust, who had obtained a part of the trust fund from the trustee and invested it in slaves. Just as here, the person sought to be charged as trustee is Mrs. Buist, the life tenant of the trust fund, who indirectly had

obtained the trust funds and invested them in a mortgage of her property. It is not as strong a case for the *cestuis que trustent* as if Mrs. Buist had with the diverted trust funds bought certain land. Even then, according to the doctrine of the Wallace case, she would not have been held liable for the land, but only the land should be held as security for the trust fund invested in it.

"The point seems also to be thoroughly settled against the contention of the defendants in the recent case of *Green* v. *Green,* 56 S. C. 193. In that case Mrs. Lucy Green was the life tenant of certain property; she insured the dwelling house and paid the premiums; the house was destroyed by fire and the insurance, $3,000, was paid to her; with it she purchased a junior lien upon other property, and afterwards, at foreclosure sale, bought it and paid for it with her own money.

"The Court held that the life tenant was a trustee for the remaindermen; that the $3,000 insurance money was traced into the property purchased by Mrs. Green; that the transaction created a resulting trust and that the remaindermen could follow the fund into the land. As to the contention that the remaindermen were entitled to proportionate interest in the property itself the Court says: 'And in reaching the conclusion that the proceeds arising from the sale of the brickyard place should only be considered as a security for the $3,000, we have depended upon our own convictions, under the proof of what was just and equitable between these parties litigant; and our views have been reinforced by the following cases and authorities: *Matthews* v. *Heyward,* 2 S. C. 245, where this Court quoted with approval this language from Lewin on Trusts and Trustees, 762: "When a trust fund is traced into land, and the fund constituted a part only of the money laid out in the purchase, the Court has usually given a lien merely on the land for the trust money and interest * * *." *Meyers* v. *Meyers,* 2d McC. Chan. 264, where the Court puts the

view into these words: "A person may sometimes, by mixing trust funds with his own, subject himself to the loss of both, for it is his own fault if they have not been kept separate; but it does not appear to me that this is a case which will subject the defendant to the loss of all the property he has in his possession merely because he cannot show what part of it has been purchased with the proceeds of the trust estate." Adams, Equity, page 143, where that author says: "In like manner, if an estate or fund has been changed by breach of trust, the *cestuis que trustent* may, at his option, waive its restoration, and may attack and follow it in its altered form, *e. g.*, if a trustee or executor purchase an estate with his trust money or assets, and the fact of his having done so be admitted or distinctly proved, the parties interested in the money may claim the estate; or, if the purchase be made partly out of the trust fund and partly out of the trustee's own property, they may claim a lien for the amount misapplied."' See, also, 2 Perry on Trusts, sec. 841; *Denton* v. *Davies,* 18 Vs. 499; *Noble* v. *Andrews,* 37 Conn. 346; *Lane* v. *Dishton,* Ambler 409; *Lewis* v. *Madocks,* 8 Ves. 150; *Lewis* v. *Madocks,* 17 Ves. 48; *Price* v. *Blackmore,* 6 Beav. 107; *Scales* v. *Baker,* 28 Beav. 91; *Hopkins* v. *Conyers,* L. R., 2 Eq. 545.

"It is, therefore, ordered, adjudged and decreed, that all of the exceptions to the several reports of the master inconsistent with this decree be, and the same are hereby, overruled.

"It is further ordered, adjudged and decreed, that the *corpus* of the trust estate in the hands of Hugh B. Buist, trustee, be, and the same is hereby, fixed at the sum of seven thousand five hundred and one and 53-100 ($7,501.53) dollars; and that, upon the death of Eliza F. Buist, the said *corpus* be vested in the defendants, J. Hudson Williams and William A. Williams, or in the survivor of them.

"This case having developed from the simple purpose of a substitution of securities, contemplated by the plaintiff, into a case against the trustee for an accounting, and plaintiff's attorneys having announced their purpose of making other arrangements with reference to the substitution of the mortgage,

"It is ordered, that the complaint, as to such substitution, be dismissed and that, under the circumstances, the defendant, Hugh B. Buist, as trustee, be, and he is hereby, authorized to pay the costs of this proceeding out of the trust estate."

Defendants, J. Hudson Williams, William A. Williams and Mrs. Willie C. Williams, appeal on the following exceptions:

"It is submitted that his Honor, the presiding Judge, in granting said decree, erred in the following particulars:

1. "In holding that the master erred in finding that the defendants, J. Hudson Williams and William A. Williams, had any interest in the 82 1-10 acre tract of land as a portion of the trust fund created by the deed of John H. Williams.

2. "In holding that no portion of the 82 1-10 acre tract could be regarded as a part of the trust estate unless three things should coincide, namely: (a) That the trustee has committed a breach of trust in investing the trust funds in the manner complained of; (b) That the trust fund actually went into the property in which an interest is claimed; and (c) That Mrs. Buist was a party to the breach of trust, or that she was a voluntary donee of the fund diverted. It is submitted that the rule of law thus laid down is erroneous, the true doctrine being that where a trustee employs trust funds in paying for lands, the title to which he takes in his individual name or in the name of a third person, the *cestuis quæ trustent* are entitled, at their election, either to hold the trustees accountable for

the money so invested, or to accept the investment as made for the benefit of the trust estate. This option is exclusively given to the *cestuis que trustent,* who may follow the property into the hands of a third person, unless he be a purchaser for value without notice. The plaintiff cannot claim to be such purchaser in the present instance; therefore, that portion of the 82 1-10 acre tract of land which was bought with trust moneys should have been declared a part of the trust estate.

3. "In failing to hold that, even if the erroneous doctrine so laid down were applicable to the present case, a part of the 82 1-10 acre tract should be regarded as a portion of the trust estate; it being submitted that all three of the conditions specified in said rule were clearly proved to exist.

4. "In holding that a trust could be impressed upon the land only through the conduct of the plaintiff constituting her a *quasi* trustee; and that it could not be done through the conduct of the trustee in committing a breach of trust; it being submitted that it is the breach of trust by the trustee which gives the *cestuis que trustent* their option to take the investment as a part of the trust estate, and not any act on the part of any third person in whose name the title to the land may happen to be taken.

5. "In holding that if there has been no breach of trust on the part of the trustee, to the knowledge or voluntary benefit of the plaintiff, she cannot stand in the relation of trustee to the estate; it being submitted that this doctrine would be erroneous unless the plaintiff were a purchaser for value.

6. "In holding that the payment by the trustee, H. B. Buist, of $318.70 on the Marshall mortgage, on February 8th, 1877, did not constitute a breach of trust; it being submitted that it was a direct investment of the trust fund in land, and that the title to such land was not taken in the trustee's name, but in the name of his wife.

7. "In holding that such transaction simply amounted to a loan to the plaintiff, the testimony showing conclusively that it was never so considered by any of the parties thereto.

8. "In holding that the trustee's payment of $540 to Mrs. K. F. Williams, in May, 1877, stood upon a different footing from the payment of $318.70; it being submitted that both payments accomplished precisely the same purpose, and should be given the same legal effect.

9. "In holding that the *cestuis que trustent* could, at most, claim to be subrogated to the rights of Mrs. Williams against the plaintiff; it being submitted that the $540 payment should have been considered a purchase of that proportion of the land for which it paid.

10. "In holding that the testimony failed to show that the plaintiff knew of or was a party to such breach of trust, and that in such event it amounted simply to a voluntary payment by the trustee for his wife's benefit, for which she was not accountable; it being submitted that it is not necessary to prove the wife's knowledge of or participation in a breach of trust for her benefit in order to afford relief to those injured by such breach of trust.

11. "In holding that even if the plaintiff directed the trustee to pay the money to her mother, Mrs. Williams, such payment would not constitute a breach of trust, inasmuch as it was the plaintiff's duty to pay her debts; it being submitted that it was not her duty to take trust funds to pay her debts, and it was not the duty of the trustee to assist her in doing so.

12. "In holding that the only relief to which the *cestuis que trustent* were entitled was to hold the 82 1-10 acre tract as security for the two sums of trust money used in its payment; it being submitted that the *cestuis que trustent* have the option of regarding the investment of trust funds as for the benefit of the trust estate, and the right to claim not merely a lien on the land, but the land itself, because it was paid for with trust moneys.

13. "In holding that the trustee had made a good bargain for his ward, by the purchase of said land, and that the ward was entitled to all the benefits of that bargain; it being submitted that there is no more justice in allowing the plaintiff to reap all the benefits of the increase in value of the land than there would be in allowing the trust estate to reap all the benefits therefrom. The guardianship moneys and the trust moneys were used in different proportions in buying the land; both funds should share the profits in exactly the same proportions.

14. "In holding that where a trustee, who had no individual means, should purchase land with trust funds and take the title in his own name, the *cestuis que trustent* would have a right to follow the fund into the land; but that if the trustee had enough money of his own to make a partial payment, and only used enough of the trust funds to pay the balance of the purchase price, the *cestuis que trustent* would have no such right. It is submitted that there is no legal foundation for any such distinction; that the two cases supposed differ in degree only, and not in kind, and that the same rule should be applied to each.

15. "In holding that the point in question seems decided against the *cestuis que trustent* by the case of *Green* v. *Green,* 56 S. C. 193; it being submitted that the trust considered in that case was implied, while that in the present case is express. Moreover, the principle for which the appellants here contend was fully established in the Green case.

16. "In overruling the appellants' exceptions to the master's two reports.

17. "In decreeing that the *corpus* of the trust estate now in the hands of Hugh B. Buist, trustee, was $7,501.53; it being submitted that he should have found it to be as follows: Amount received from James W. Williams, trustee, $6,757.50, plus $644.03 profits in Piney Mountain lands; $7,401.53, less $858.70, paid on purchase price of the

82 1-10 acre tract, $6,542.83; plus $7,137.00, increase in value of said land, $13,679.83; plus $2,481.00, increase in value of the Burgess tract, $16,160.83; and, also, .2069 of the 82 1-10 acre tract of land.

18. "In ordering the trustee to pay the costs of the case out of the trust estate; it being submitted that the litigation has been rendered necessary by the trustee's repeated breaches of trust, and that he should properly be compelled to pay the costs from his own pocket.

19. "In failing to hold that the present value of the Piney Mountain land is $9,425.00, and that the trustee should be charged with $7,177.00, being the increase in value over the price, $2,288.00, for which he sold them, the testimony of the trustee being that he appropriated the proceeds of sale to his own use; and it being submitted that a sale of the lands for the purpose of misappropriating the funds derived therefrom was not within the powers delegated to the trustee under the deed of John H. Williams, and constituted a breach of trust.

20. "In failing to hold that the present value of the Burgess tract is $4,995.00, and that the trustee should be charged with, $2,481.00, being the increase in value over the price, $2,514.00, for which he sold it; the testimony of the trustee being that he appropriated the proceeds of sale to his own use; and it being submitted that a sale of the lands for the purpose of misappropriating the funds derived therefrom was not within the powers delegated to the trustee under the deed of John H. Williams, and constituted a breach of trust.

21. "In failing to hold that the trustee's payment of $318.70 on the Marshall mortgage on February 8, 1877, and his payment of $540 to Mrs. K. F. Williams in May, 1877, constituted investments of trust funds aggregating $858.70 in the 82 1-10 acre tract of land; and that the *cestuis que trustent* having signified their acceptance of such investments for the benefit of the trust estate, twenty

and sixty-nine hundredths per cent. (.2069) of said 82 1-10 acre tract of land now belongs to said trust estate.

22. "In failing to hold that the defendant, Hugh B. Buist, was liable for the sum of $16,160.83, which now is or should be in his hands as trustee, and that if he should fail upon the plaintiff's death to pay over said sum to the remaindermen entitled thereto, the plaintiff's interest, to wit, 79 31-100 per cent. (.7931) of the value of the 82 1-10 acre tract of land, should be. subjected to. the payment of said sum to the extent of $13,928.00, being the aggregate sum secured by two bonds executed by Hugh B. Buist and Eliza F. Buist to the probate judge of Greenville county, and his successors in office, and by the two mortgages executed by the said Eliza F. Buist to said probate judge in connection with said bonds, which mortgages cover the said 82 1-10 acre tract of land."

The plaintiff, Eliza F. Buist, and the defendant, Hugh B. Buist, except to the decree on the following grounds:

I. "His Honor erred in holding as follows: 'Upon the death of Eliza F. Buist, childless, the *corpus* of the trust estate in the hands of the trustee will vest in the defendants, J. Hudson Williams and W. A. Williams, or the survivor of them;' and also in holding: 'That upon the death of Eliza F. Buist the said *corpus* be vested in the defendants, J. Hudson Williams and W. A. Williams, or the survivor of them.' Specifications: His Honor should have held that upon the death of Eliza F. Buist her share of the trust fund will become intestate property of John H. Williams, or a resulting trust in favor of said grantor.

II. "That the presiding Judge erred in not sustaining the first exception to the master's report, which was as follows: 'The master erred in finding as follows: 'The intention and desire of the grantor was to part with his whole estate in the land and to convey it for the benefit of his three grandchildren, as payment for the release on their part of certain

claims which they held against him. In other words, there was a valuable consideration paid to him by these grandchildren alone. No other relatives of the grantor contributed toward the payment of this consideration, for the claim was held by these three grandchildren and by none of his other relatives. Clearly, then, this conveyance was exclusively for the benefit of these three grandchildren and their issue, and not for the benefit of the grantor's other relatives, so long as any of these three grandchildren or their issue should be in existence.' Specifications: (1) The main consideration of the trust deed was natural love and affection; the valuable consideration, to wit, a relinquishment of a certain claim, being subsidiary thereto and insignificant in value. (2) The conveyance was not for the benefit of the three grandchildren and their issue, except upon the terms stated in the deed applicable to the issue, respectively, of the three grandchildren. (3) The conveyance was for the benefit of the issue of said grandchildren only in the event that any one of them left issue surviving him or her.

III. "That the presiding Judge erred in not sustaining the second exception to the master's report, which was as follows: 'The master erred in finding that upon the death of the grandchildren the land was to go to the issue absolutely, free from all trusts; whereas, he should have found that the trusts declared in the deed are as follows: (1) For the sole and separate use of the said grandchildren for and during their natural lives. (2) At the death of any one of them his or her share should go to the issue of such one dying. (3) If either of the grandchildren should die leaving no issue, such share should go to the survivor or survivors of said grandchildren. (4) In case all three of the grandchildren should die without leaving issue, then over to his four children named.'

IV. "That the presiding Judge erred in not sustaining the third exception to the master's report, which was as follows: 'That the master erred in finding that the land was

18—88

not to revert to the grantor's estate, or to go to any of his other relatives, unless all three of his said grandchildren should die without leaving issue surviving them; for the reason that the trust deed declares that the issue of a grandchild should only take the share of their parent; and in the condition which has arisen the issue of W. A. Williams are not entitled to take, under the description of survivor or survivors "of my said grandchildren." Elizabeth Williams died without issue; her share devolved equally upon W. A. Williams and Eliza F. Buist; W. A. Williams died leaving two children; his share devolved upon said children; Eliza F. Buist will die without issue, and under the terms of the deed her share, being limited over to the survivor or survivors "of my three said grandchildren," there being no such survivor, becomes intestate property or a resulting trust in favor of the grantor.'

V. "That the presiding Judge erred in not sustaining the fourth exception to the master's report, which was as follows: 'The master erred in finding that upon the death of Eliza F. Buist her share of the trust fund, free from all trusts and limitations, will go to the surviving issue of the grandchildren, J. Hudson Williams and William A. Williams, or, if either of them be not living, to the surviving one; for the reason stated in the preceding exception, that upon the death of Eliza F. Buist her share of the trust fund will become intestate property of John H. Williams, or a resulting trust in favor of said grantor.'

VI. "That the presiding Judge erred in not sustaining the fifth exception to the master's report, which was as follows: 'That the master erred in finding that the intention of the grantor was to convey the trust estate to his three said grandchildren, and to the issue of any one of them; for the reason that the effect of such holding is to create cross remainders in a deed, which cannot be done; the rule being that cross remainders may be implied in a will if the

intention of the testator be clear, but that they can never be implied in a deed.'

VII. "That the presiding Judge erred in not sustaining the sixth exception to the master's report, which was as follows: 'The master erred in finding that the grantor did not intend to die intestate, as to any portion of his estate; for the reason that the grantor's intention must be ascertained by the words used; that the circumstances have created a condition of things not provided for in the deed, the necessary effect of which is that upon the death of Eliza F. Buist her share becomes intestate property by way of a resulting trust in favor of the grantor.'

VIII. "That the presiding Judge erred in not sustaining the seventh exception to the master's report, which was as follows: 'That the master erred in finding that in no possible event can any part of the trust estate revert to the heirs of Eliza F. Buist, as an heir of the grantor, for the reason that a resulting trust would not be created only upon her death without issue; for the reason that the share of. Eliza F. Buist will become intestate property of John H. Williams, distributable among his heirs, one of whom is the said Eliza F. Buist.' "

*Messrs. B. M. Shuman* and *Cothran, Dean & Cothran,* for plaintiff, and *Hugh B. Buist,* cite: *The cestui que trustent are not entitled to a pro rata share in land on which mortgage was paid in part by trust fund:* 1 Rich. Eq. 426; 56 S. C. 232; 2 Perry on Trusts, secs. 857, 842; 17 Ves. 49; 8 Ves. 150; Lewin on Trusts 762; Adams Equity 142; 18 Ves. 500; 59 S. C. 70; 8 S. C. 87. *Trustee should not be charged with present value of land bought and sold or of land sold under the trust deed:* 25 S. C. 239; 2 Perry on Trusts, sec. 783; 12 Rich. Eq. 254; 28 Ency. 1001, 1029; 2 Strob. Eq. 162; Rich Eq. 369; 3 S. C. 77; 2 McC. Ch. 267. *Defendant-appellants invoke the doctrine of cross-*

*remainders:* 32 S. C. 563; 24 Ency. 415; 32 S. C. 563; 4
Rich. Eq. 262.

*Messrs. Haynsworth & Haynsworth* and *L. O. Patter-
son,* for defendants-appellants, cite: *Have the remainder-
men any interest in the land of which the trust fund paid the
mortgage in part?* 2 S. C. 239; 3 How. 401; 45 Am. D. 642;
29 Id. 539; 44 Am. St. R. 820; Rich. Eq. Cas. 172; 2 Mel.
Eq. 217; 24 S. C. 183; 7 S. C. 185; 45 Am. Dec. 642; 25 S.
C. 35; 4 Rich. Eq. 165; 1 Hill Ch. 354; 6 S. C. 159; 13
Rich. Eq. 269. *To whom will trust fund go on plaintiff's
death?* 5 Ency. 1086; 30 Ency. 704; Chev. Eq. 80.

March 28, 1911. The opinion of the Court was deliv-
ered by

MR. CHIEF JUSTICE JONES. Reference may be had to the
decree of the Circuit Court and the exceptions thereto, here-
with reported, for a full statement of the facts and issues.

We notice first the question as to the proper construction
of the trust deed executed, August 26, 1858, by John H.
Williams to James W. Williams, trustee. After reciting
the consideration, natural love and effection for his
grandchildren named and their release of all claims
against him on account of certain slaves, the grantor
conveyed the tract of land in Abbeville district containing
2,057 acres known as the Burgiss tract, unto said trustee,
his heirs and assigns forever upon the following trusts:
"In trust for the sole and separate use of my aforesaid
grandchildren for and during their natural lives, and, at
their respective deaths, their respective shares of said land
or the proceeds thereof, if sold, shall be divided among their
respective issue living at their respective deaths, according
to the provisions of the Acts of the General Assembly of this
State for the distribution of intestates' estates, but should
either of my said grandchildren die, leaving no issue living
at the time of his or her death, then and in that event, the

share of such grandchild so dying shall go to the survivor or survivors of my said grandchildren, to be held by the said James W. Williams as trustee upon the same terms and limitations that he holds the original shares, and in case all three of my said grandchildren should die without leaving issue surviving them, then and in that case the said land or the proceeds thereof, if sold, shall be equally divided among my four children, James W. Williams, Robert C. Williams, Elizabeth C. Williams and Theresa O. Williams, the child or children of a deceased child taking the share its or their parent would have taken if living at the happening of contingency last mentioned, as part of the trust of this deed."

It is contended in behalf of plaintiff that the proper construction of this deed requires the conclusion that upon the death of Eliza F. Buist, childless, the *corpus* of the funds now in the trustee's hand, will become intestate property of John H. Williams, the original grantor, or a resulting trust in him or his heirs.

The three grandchildren were Eliza F. Williams, plaintiff, now wife of H. B. Buist, Martha E. Williams who died unmarried and childless, and William A. Williams who died in 1888 leaving as his issue defendants J. Hudson Williams and William A. Williams. It is contended that as Eliza F. Buist is the last survivor of the three grandchildren, upon her death childless, there will be no one answering the description "Survivor of my said grandchildren," and that the estate cannot go over to the four children named because all three of the grandchildren did not die without leaving issue surviving them, hence the estate reverts to the grantor and his heirs.

The Circuit Court declined to accept this view and sustained the conclusion of the master, who reported in part as follows: "After careful perusal of deed and close consideration of it, as a whole, and in reference to the words,

phrases and clauses therein contained, it is manifest to the master that the intention and desire of the grantor was,

"(1) To part with his whole estate in the land, and to convey it for the benefit of his three grandchildren as payment for the release on their part of certain claims, which they held against him. In other words: There was a valuable consideration paid to him by these grandchildren alone. No other relatives of the grantor contributed towards the payment of this consideration, for the claim was held by these three grandchildren, and by none of his other relatives. Clearly then, this conveyance was exclusively for the benefit of these three grandchildren and their issue, and not for the benefit of the grantor's other relatives, so long as any of these three grandchildren or their issue should be in existence.

"(2) That these three grandchildren should not own the land *absolutely,* but only for their lives.

"(3) That upon the death of the grandchildren, the land was to go to the issue *absolutely;* free from all trusts.

"(4) That the land was not to revert to the grantor's estate, nor to go to any of his other relatives, unless all three of his said grandchildren should die without leaving issue surviving them.

"Then, if these conclusions are the expressed intent of the grantor, the existing circumstances admitted by the pleadings being that the plaintiff is to die without issue, and the defendants, J. Hudson Williams and William A. Williams, will be living at the time of her death, then upon the death of Eliza F. Buist her share of the trust fund, freed from all trusts and limitations, will go to the surviving issue of the grandchildren, to wit: J. Hudson Williams and William A. Williams, or, if either of them be not living, then to the surviving one."

We affirm this construction. This is a trust deed. A court of equity in its jurisdiction over trusts is not bound by the technical rules of the common law, and will seek the

intention of the grantor from the whole instrument. *McMichael* v. *McMichael,* 51 S. C. 558, 29 S. E. 403. Viewing the deed as a whole we think the construction given effectuates the intention of the grantor, which was to convey the entire estate in trust for others, first for the benefit of the three grandchildren for life, then remainder in fee for their issue if any then living, and if no such issue, then over to the children named.

We agree with the Circuit Court that the *cestuis que trustent* are not entitled to a proportionate interest in the 82.1 acre tract, because of the two payments of $318.70 and $540 derived from the trust fund. This land on July 12, 1873, was conveyed by the Marshall devisees to Hugh B. Buist as guardian of Eliza F. Buist, and on February 7, 1877, was conveyed by Hugh B. Buist as guardian of Eliza F. Buist. At that time $318.70 was due on the mortgage given by H. B. Buist for the purchase money which originally was $4,150. On that day H. B. Buist qualified as trustee in the place of James W. Williams and gave his bond to the probate court with Eliza F. Buist as surety and to secure this bond Eliza F. Buist executed a mortgage on said tract. The amount $318.40 due the Marshall devisees on the mortgage to them for the purchase money was paid by H. B. Buist from the trust fund. The *cestuis que trustent* claim a proportionate part of the land, invoking the rule of equity that *cestuis que trustent* have the option to follow the fund into the new investment and claim the profits or hold the trustee liable for the breach of trust. This is a well established rule, but it cannot apply in this case to the extent claimed. No land was acquired by means of the trust fund, as it had been acquired long before the inception of the trust. All that was acquired was the removal of a lien upon this land, and all the claims of equity will be vindicated by subrogating the trust estate to the lien removed by the trust fund. This was in effect done when Eliza F. Buist became surety on

the trustee's bond and mortgaged this property to secure the same. All agree that the bond is well secured.

With respect to the $540 payment it appears that while this sum was paid on the Marshall mortgage previous to the time when H. B. Buist became trustee from money furnished by Mrs. Williams, the mother of Mrs. Buist, the amount was afterwards repaid out of the trust fund. Of course, the trustee is accountable for this money and the Court so holds, and the trustee raises no objection thereto; but it does not follow that such use of the trust fund gives the *cestui que trustent* the right to claim a proportionate part of the land. The greatest reach of equity could not go beyond impressing a lien upon the land to the extent of the payment. This also has been already accomplished by the mortgage given by Mr. Buist on this land to secure the trust estate. The cases of *Wallace* v. *McCullough,* 1 Rich. Eq. 426, and *Green* v. *Green,* 56 S. C. 193, 34 S. E. 249, 46 L. R. A. 525, cited in the decree, sustain the ruling of the Circuit Court.

We think the master and Circuit Court were correct in holding that the trustee should not be charged with the present value of the Piney Mountain land. It appears that the trustee bought this tract paying therefor $730.47 out of the trust fund subsequently spent $813.50 improving it, and sold it for $2,288, making a profit of $744.03. The land was deeded to Mr. Buist as trustee and sold as trustee, and he has been held accountable for the money expended from the trust fund and the profit made, to which he makes no objection. It is manifest from the statement that the present value of the land is not chargeable against the trustee. The master, while holding the use of the trust funds in buying and improving real estate was a technical breach of the trust, acquits the trustee of any dishonest motive. Equity is fully satisfied by charging the trustee with the profits made, together with the trust fund expended.

It is very clear also that the trustee should not be charged with the present value of the Burgiss land. The sale was not wrongful, but was made under the authority and discretion conferred by the trust deed, acting in good faith. In such case the trustee can only be required to account for the proceeds of sale.

The judgment of the Circuit Court is affirmed.