ROSE ROATS, APPELLEE, v. HARRY ROATS, APPELLANT.

FILED JANUARY 11, 1935.  No. 29087.

*McNeny, Gilham & Sprague,* for appellant.

*Carrico & Carrico* and *James D. Conway, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is an action by a beneficiary, under the wills of her father and her mother, against her brother, who was named trustee in each of said wills, to require the trustee to reimburse her for certain funds she had paid out in her own behalf. Judgment for plaintiff, from which trustee appeals.

Augustus Roats died prior to 1927, devising two tracts of land to his wife for life, and then to his son, Harry, in trust for his daughter, Rose. At her death the remainder should vest in the trustee.

Sarah Roats, the widow, died August 5, 1929, and the third paragraph of her will reads as follows: "I give, devise and bequeath to my executor hereinafter named the sum of $4,000 in trust, however, for the following purposes: I direct that my said executor shall invest said sum of $4,000 and pay the income of said $4,000 to my daughter Rose Roats, and I also empower my said executor to use so much of the principal of said sum of $4,000 as he deems necessary for the care and support of my said daughter, Rose Roats."

The plaintiff, Rose Roats, was born on the home place in Webster county, and lived on this farm until after the death of her mother. Shortly thereafter her brother Harry, being the executor and trustee in his mother's will, insisted that she could not longer live in the old farm home, which belonged to him, but that she should move off the place. At a conference of several members of the family, she testifies that he told her to buy a house in Red Cloud out of her own funds, and he would reimburse her out of her $4,000 trust fund as soon as the estate was settled. She said she acted upon his promise, and bought a home for $1,700, and paid $300 additional, also out of her own private funds, for shingling the roof and making other needed repairs.

Celia A. Smith, a sister of Rose and Harry, in answer to question No. 138, said: "Harry said she should have somewhere to live, so Harry and myself and Rose talked about it and he said to Rose, 'You take your money out of the bank and pay this man Mitchell for the property and I will pay it back to you when the estate is settled.'"

The trustee positively denied that he ever made any such agreement, and refused to pay her the $2,000. He testified that he moved to the state of Michigan in 1919, and has lived there ever since, and gave his residence at the time of the trial as Highland Park, Michigan, but claims that he made a trip to Nebraska every year and looked after the crops from the rented farms.

On cross-examination, his evidence of crop receipts, by years, from the land for which he is trustee for her under his father's will, left much to be desired. He finally made an estimate that he had paid her nearly $1,100 as her share of the crop rents since her mother died. Some or all of such payments were made to her by depositing it to her account in the bank at Red Cloud, upon which account he had the right to draw checks, as, for instance, for taxes. He said he had, in addition, paid her 4 per cent. a year, being $160 a year, upon the trust fund of $4,000.

It was shown by the evidence that Rose was rather sickly, being afflicted with diabetes, and that she requires a doctor at frequent intervals, and sometimes the services of a nurse. Other relatives also assist her at such times, but her brother Harry appears from the evidence to feel no responsibility whatever for her care or support, aside from the payments due her for crops and interest.

He testified he never looked after her at all, and did not think it was necessary to ascertain whether she needed more than the payments which he had made to her. He was asked: "In case Rose uses no more than the income from this property, the principal goes to you?" His answer: "That was the intentions." However, that question is not before us at this time.

In the decree the trial court directed the trustee to pay

her $35 wheat money that was unpaid, and directed him to sell the corn crop of 1932 and pay her the proceeds, but denied the demand of plaintiff that the trustee be removed.

The troublesome question in the case for the trial court and for this court is the question of the purchase of the town house out of these trust funds. The trial court found that it may have been entirely proper for the trustee to refuse to allow Rose to continue to occupy the farm home after her mother's death, and that the question of the purchase of the town property is largely a question of fact. He finds that the plaintiff is corroborated by the testimony of her sister, and finds that there is nothing in the terms of the will which would prevent the trustee from carrying out this agreement, and directs the trustee to reimburse Rose for the expenditure of $2,000.

1. In the oral argument in this court on behalf of the trustee, his attorney closed with this query: "I just want to ask the court one question: Can you buy houses with trust funds left in a will when only the income is to go to the beneficiary?"

The answer can only be given by this court, if it can ascertain the real intention of the mother in creating this trust fund, and such intention must, if possible, be gathered from an analysis of the language she used in her will. True, she did provide that the trustee should pay the interest to the daughter, but, more than that, she empowered the executor, who became the trustee, to use so much of the principal of said sum as he deemed necessary for the care and support of this ailing daughter. When the mother died the daughter could not stay on the farm alone, and she had no other residence at that time in which to live. The trustee asked her to vacate the farm he owned. The burden is upon the plaintiff to prove by the greater weight of the evidence that in this emergency the trustee offered to provide her a new home, and agreed to pay for the same out of these trust funds held for her benefit as soon as the estate was settled. In our opinion, his promise to do this has been established.

2. The words "care and support" are very broad terms, and may be restricted or enlarged according to the necessities of the beneficiary. Under the terms of the mother's will, could not the entire sum of $4,000 under some circumstances have been expended in affording that care and support which was necessary?

3, 4. The trustee refuses to pay this $2,000 for a home, as he promised to do. From early times courts have been reluctant to interfere with the exercise of a discretion lodged in a trustee. But courts of equity are not without power in such a matter. Let us consider two exceptions to the general rule. First, whenever the court finds from the evidence that the trustee's refusal is influenced by self-interest, it always has a valid ground upon which to act.

5. There is another exception which comes to mind, and that is that a denial of support and care of the beneficiary might be such as to amount to a violation of the trust. This would warrant action by a court on the ground of an abuse of discretion on the part of the trustee.

6. It is contended that the plaintiff has other funds which she can call in and use to care for her every need, but admitting this fact does not relieve the trustee from faithfully carrying out the letter as well as the spirit of the terms of the bequest upon which his stewardship is founded. The provision of the mother in her will, setting up this $4,000 cash fund for the benefit of her daughter, did not provide that the trust funds should not be used until the daughter had first exhausted all other funds she might have, if any, but empowered the trustee not to hold and *retain;* but, on the other hand, to *use* so much of the principal as he should deem necessary for her care and support, with no thought of personal advantage to himself. Equity and good conscience whisper that, in case of doubt in construing such a provision in a will, it is better to err in favor of the beneficiary, and against the trustee, than otherwise.

We have reached the conclusion, at the end of this discussion of the case, that the trial judge was warranted by

the weight of the evidence in entering the decree he rendered, and the same is

AFFIRMED.