First National Bank in Oshkosh, Trustee, and another, Respondents, vs. Barnes and others, Appellants.

*March 13—May 20, 1941.*

628

The cause was submitted for the appellants on the briefs of *Chas. H. Velte* of Neenah; for the respondent First National Bank in Oshkosh on the brief of *Weed & Hollister* of Oshkosh; and for the respondent Carrie W. Barnes on the brief of *Barber, Keefe, Patri, Stillman & Nolan* of Oshkosh.

MARTIN, J.   George Dewey Barnes, who established the trust in question, hereinafter referred to as the "settlor," died November 16, 1933.   Carrie W. Barnes is his mother. The trust indenture was executed March 29, 1930.   The petition of the corporate trustee prays for orders of the court as follows: "(1) Construing subdivision (a) of paragraph 5 [of article 8] of the trust indenture [printed in the margin];[1] (2) fixing the status of the excess payments over the face value of the policies amounting to $6,885.31 received by said trustees; (3) in the event that the court finds that these excess payments should properly be treated as principal, then for an order approving the action of the trustee in the payment of allowances to said Carrie W. Barnes in the total sum of $2,601.06 in excess of the available net income from said trust fund; (4) authorizing and directing the trustees from now on, and until further order of the court herein, to pay to said Carrie W. Barnes a fixed monthly allowance, out of income so far as it will reach, and the balance out of principal,

[1] "5. The remainder of the proceeds of grantor's insurance is to be invested by the trustees and the net annual income is to be paid as follows:

"(a) $3,600 per year is to be paid to grantor's mother, Carrie W. Barnes of Neenah, Wisconsin, in monthly instalments as long as she lives.   In case of sickness, accident, or other emergency happening to said Carrie W. Barnes, the trustees may, in their judgment and discretion, increase this allowance to an amount sufficient to meet such emergency.   The reason for appointing said Ray J. Fieweger as individual trustee is to place an individual with whom said Carrie W. Barnes is friendly and in whom she has confidence, in such a position that, with the financial acumen of a trust company of unimpeachable honesty and his own personal solicitude, her best interests may be served in a manner conducive to her peace of mind."

for her proper support and maintenance; and (5) for such further order and direction as may be proper and necessary in the premises." Attached to the petition and made a part thereof is a copy of the trust agreement.

It appears from the petition that upon the death of the settlor, the corporate trustee came into possession of the sum of $150,000, being the face value of the life insurance policies covered by the trust, and the further sum of $6,885.31, the latter sum made up principally through the expiration of total-disability clauses in the policies of the Old Line Life Insurance Company, and also by premium refunds, dividends, dividend additions, and interest items paid on other policies covered by the trust indenture. It further appears that the trustees treated this item of $6,885.31, the excess of the face value of the policies, as income and so credited it in their accounts. The petition further shows that the trust fund was substantially reduced by certain claims made against it in addition to the several amounts which the settlor had directed to be paid, leaving a balance in the trust of $54,113.42.

From the date the trust was established, December 4, 1933, to July 1, 1937, the net income received from the trust amounted to $9,706.65. During this period, the allowances paid to Carrie W. Barnes amounted to $12,900, thus producing a shortage of income as against allowances in the sum of $3,193.35. This latter figure has since been reduced to $2,601.06. It is further stated in the petition "that in the absence of some relieving order of the court herein, it [corporate trustee] will be compelled to further reduce the monthly income which may be paid to said Carrie W. Barnes until it has recovered out of income the said sum of $2,601.06." It is stated that the principal of the trust ($54,113.42) will only produce an annual income available for distribution to said Carrie W. Barnes of approximately $1,750. In her petition, Carrie W. Barnes asked that the amount overpaid her, $3,193.35, now reduced to $2,601.06, should not be charged

against her future allowances but should be treated as necessary payments out of principal; that an order should be entered at this time for payments of $200 per month even though such payments exceed the income; and that whatever amounts are so paid in excess of net income should be charged against principal. She also asked for a ruling on the question as to whether or not the payments on the policies in excess of the face value ($6,885.31) should be treated as income or principal.

The appellant guardian *ad litem* contends that the court erred in approving the payments made by the corporate trustee to Carrie W. Barnes of amounts in excess of income, and in authorizing and directing the trustees to use as much of the corpus as may be necessary, when added to the income, to total $300 per month. In other words, the question is whether the trustees may pay anything out of the corpus of the trust to Carrie W. Barnes. On the other hand, the corporate and the individual trustees, also Mrs. Barnes, contend that it was the intention of the settlor in creating the trust to make such allowances to his mother as would be sufficient to provide her with a comfortable living under all circumstances, and that payments to her for that purpose are not limited to the income of the trust, that if the income should prove insufficient, the necessary additional amount may be paid from the corpus of the trust.

Article 8 of the trust indenture provides that the trustees shall make the following disbursements of principal and income: (1) The sum of $15,000 for the building of a mausoleum on the family cemetery lot; (2) $2,500 to be held by the corporate trustee, the income of which is to be used for the care and maintenance of the mausoleum provided for above; (3) $10,000 to be held by the corporate trustee in trust and designated the "George Dewey Barnes Memorial Funeral Aid Fund," income from said fund to be paid to the city of Neenah for the purpose of aiding worthy persons or families in de-

fraying funeral and burial expenses, etc.; (4) the sum of $10,000 to be paid to a niece, Ruth Marion Barnes, daughter of settlor's deceased brother, Howard Warren Barnes, provided she has attained the age of thirty years. If said niece has not attained that age at the time for distribution under the trust agreement, same shall be reserved and used as provided in the next succeeding provision until she arrives at the age of thirty years. In such event said $10,000 shall be paid to her when she arrives at the age of thirty years. In case of her death before attaining said age, said sum shall revert to the trust to be dealt with and disposed of in accordance with the terms and provisions thereof. Then follows paragraph 5 (a) of article 8, printed in the margin, which contains that part of the trust indenture which the court was asked to construe. The first sentence of said paragraph provides: "The remainder of the proceeds of grantor's insurance is to be invested by the trustees and the net annual income is to be paid as follows:" $3,600 per year is to be paid to grantor's mother, Carrie W. Barnes, in monthly instalments as long as she lives. In case of sickness, accident, or other emergency happening to her, the trustees may, in their judgment and discretion, increase this allowance to an amount sufficient to meet such emergency.

While subdivision (b) of paragraph 5, article 8, is not included in the part of the instrument construed, it has a direct bearing upon the proper interpretation of subdivision (a). It provides:

"(b) The residue of the income, and the entire income after the death of Carrie W. Barnes, is to be paid one half to grantor's brother Robert J. Barnes of Oshkosh, Wisconsin, and one half to grantor's brother Ralph E. Barnes of Neenah, Wisconsin. Upon the death of either or both of said brothers, his issue shall receive the parent's share, subject, however, to the provision that such issue shall receive their shares *per capita* and not *per stirpes*. If either of said brothers shall die without issue his share shall go to the surviving brother.

"During the minority of each of the children of my said brothers said trustees shall use his or her proportionate share of the income and so much of his or her proportionate share of the principal as in their discretion shall be necessary for the support, maintenance, and education of such child, and, after each child attains his or her majority, said trustees shall pay to such child his or her proportionate share of said net income until he or she arrives at the age of thirty years, whereupon the said trustees shall assign, transfer and deliver to such child, his or her proportionate share of the principal of said trust fund together with all accumulations of income if any. It is the grantor's intention that the children of his brothers shall receive their share of the income and principal *per capita* and not *per stirpes*.

"The trustees in their discretion, in the event of ill-health, sickness, accident, or other misfortune, happening to such brothers or their children, may pay to them such sum out of the principal of said trust fund as to the trustees may seem right and proper."

The only provision in the trust indenture in favor of the settlor's mother is that contained in article 8, paragraph 5 (a), —that $3,600 per year is to be paid to her in monthly instalments as long as she lives, and any additional amounts, in case of sickness, accident, or other emergency, according to the discretion and judgment of the trustees. The settlor then provided in subdivision (b) that the residue of the income, and the entire income after the death of the mother, were to be paid one half to his brother Robert and one half to his brother Ralph. The mother and the two brothers are still living.

"In construing a trust, whether created by a will or by another instrument, the language thereof should be so construed as to give effect to the intention of the testator or settlor, if that intention may be ascertained from the language of the will or other instrument, considered in the light of the surrounding circumstances." *Welch v. Welch,* 235 Wis. 282, 306, 290 N. W. 758, 293 N. W. 150.

The language of the trust indenture is plain and unambiguous. The settlor made a definite provision for his mother to be paid out of the income of the trust estate during her lifetime. He anticipated an income from the trust estate in excess of the amount provided for the mother, and he provided that the residue of the income during her lifetime, and the entire income after her death, were to be paid one half to his brother Robert and one half to his brother Ralph, and upon the death of either or both of said brothers, their children to receive the brother's share *per capita*. If either of said brothers die without issue, his share will go to the surviving brother. During the minority of each of the children of Robert and Ralph, the trustees are directed to use his or her proportionate share of the income and so much of his or her proportionate share of the principal, that is, the proportionate share of income or principal to which such child or children became entitled upon the death of their parent, for the necessary support, maintenance, and education of such child or children, and, after each child attains his or her majority, said trustees shall pay to such child his or her proportionate share of net income until he or she arrives at the age of thirty years, whereupon said trustees shall assign, transfer, and deliver to such child his or her proportionate share of the principal of the trust fund, together with all accumulations of income, if any.

The trust indenture makes no disposition of the corpus of the trust estate until after the death of the mother and the death of a brother without issue. The corpus of the estate ultimately goes to nephews and nieces of the settlor.

The court in *Estate of Boyle,* 232 Wis. 631, 637, 288 N. W. 257, said: "The court must exercise its power to prevent enlargement or modifying the terms of the trusts and preserve the corpus of the trusts." Citing *Will of Caswell,* 197 Wis. 327, 222 N. W. 235; *Upham v. Plankinton,* 152 Wis. 275,

140 N. W. 5; *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778; sec. 231.21, Stats.

"If, thus regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning, apparent upon the face of the instrument, is the one which, alone, we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument, and neither courts nor legislatures have the right to add to or to take away from that meaning." *Boyle v. Northwestern Mutual Relief Asso.* 95 Wis. 312, 324, 70 N. W. 351, and cases cited. To the same effect, see *Hart v. Hart,* 117 Wis. 639, 648, 649, 94 N. W. 890; and *In re Moran's Will,* 118 Wis. 177, 196, 96 N. W. 367.

The trial court was of the view that the language used in the first sentence of article 8 was not altogether clear. We have quoted from article 8 the language to which the trial court refers. It does authorize the trustees to make certain disbursements from principal and income, but the items for which such disbursements may be made are specifically designated. The language used with reference to such items is clear and certain. However, following the mention of those items, the first sentence of the succeeding paragraph (paragraph 5 (a)), provides that "the remainder of the proceeds of grantor's insurance is to be invested by the trustees and the net annual income is to be paid as follows:" This sentence is followed immediately by the provision for the grantor's mother. It would be difficult to state language more clearly.

Simply because of the changed financial status of the trust estate on account of which it cannot now produce a sufficient net income to pay the mother $3,600 per year, does not authorize the trustees to make up the difference out of the corpus of the trust estate. We cannot now resort to the changed financial status of the trust estate and use that in determining the intention of the settlor as of the date the trust indenture

was executed,—March 29, 1930. At this latter time, the settlor had a life insurance estate of $150,000. It remained at this figure until his death. The corporate trustee came into possession of this amount, plus the additional sum of $6,885, creating a total trust estate of $156,885. Under article 8 of the trust indenture, the trustees were authorized to make disbursements from principal and income aggregating $37,500. If we subtract the item of $6,885, there was left a net trust estate of $112,500 as of the time the trust indenture was made and of the date of the settlor's death. He, no doubt, figured that on a conservative basis an estate of this size would produce an annual income of between $4,500 and $5,000. He evidently had this in mind, because after providing for the payment of $3,600 to his mother out of the net annual income, he provided in the next paragraph that the residue of the income during the mother's life, and the entire income after her death, should be paid in equal shares to his two brothers. The events that reduced the trust estate to $54,113.42 are of more recent occurrence. Following the settlor's death, litigation ensued, the nature of which it is not necessary to mention, but it resulted in a judgment against the estate in the sum of $46,350, which the trustees paid on December 30, 1935; also claims were made against the estate for income tax deficiencies by both the state and federal governments. The trustees were obliged to pay the state the sum of $7,923.81 and the federal government, $9,667,74 in settlement of these tax deficiencies. These items and the expense in connection therewith, account for the depletion of the trust fund.

The respondents argue that if the payments to the mother are limited to net income, the purposes of the trust will be substantially impaired. Such payments are so specifically limited, to net income, by the terms of the trust instrument. The intention of the settlor as evidenced by that instrument is clear and unambiguous. We cannot add to or take from its provisions.

The trial court erred in holding that any part of the trust corpus may be paid to the mother. Payments to her must be limited to income from the trust estate. Likewise, the court erred in approving the overpayment of $2,601.06 out of the corpus to the mother. It correctly held that the sum of $6,885.31 received by the trustees over and above the face of the insurance policies was principal rather than income.

*By the Court.*—Order and judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.