[S. F. No. 16431.   In Bank.   July 2, 1942.]

ROMIE C. JACKS, Respondent, v. MONTEREY COUNTY TRUST & SAVINGS BANK (a Banking Corporation), as Trustee, etc., Appellant.

Rosendale, Thomas & Muller and Edson G. Thomas for Appellant.

Wyckoff, Gardner & Parker, J. E. Gardner, Heller, Ehrman, White & McAuliffe and Lloyd W. Dinkelspiel for Respondent.

THE COURT.—A petition for hearing after decision of the District Court of Appeal, First District, Division Two, was granted for the purpose of giving further consideration to the question of the application to trusts created *inter vivos* of the rule applicable to testamentary trusts. (See sections 160-163 Probate Code.) After further consideration we have arrived at the conclusion that the District Court of Appeal correctly disposed of the questions presented. We therefore adopt as our opinion the following portions of the opinion of said court, prepared by Mr. Justice Spence, with additional observations.

"Plaintiff, who was a brother of Will Jacks. deceased. and a beneficiary under a trust created by the latter during his lifetime, brought this action against the defendant, as trustee, to recover certain sums claimed to have become due to said beneficiary under the terms of said trust. Plaintiff had judgment and defendant appeals.

"In 1935, Will Jacks, as trustor, conveyed to defendant in trust a large amount of real and personal property having an approximate value of $500,000. The instrument provided for the payment of the income from the trust estate to Will Jacks during his lifetime and contained further provisions for the subsequent disposition of the trust estate. It was provided that 'Upon the death of the Trustor the Trustee shall proceed to liquidate this trust estate, converting all of said trust estate into cash, as soon as practicable and advantageous in the absolute discretion of the Trustee, and upon such liquidation the Trustee shall distribute whatever there remains of the trust estate in the following manner:' Then followed directions to distribute specific sums totaling about $75,000 to the persons therein named and directions to distribute the residue to the Shrine for the benefit of the Shriners' Hospital for Crippled Children in San Francisco. All of the directions for distribution of specific sums provided for distribution directly to the intended beneficiaries except those creating the trust under consideration here. The last-mentioned provisions read as follows:

" 'To Monterey County Trust & Savings Bank in trust for Romie C. Jacks the sum of Twenty Five Thousand Dollars ($25,000.00), which said Trustee is hereby directed to set aside as a fund to be known as the "Romie C. Jacks' Trust Fund," which fund shall be within the management and control of said Trustee, with the same powers, duties, terms, conditions, and subject to the payment of the same costs, charges, fees, and compensation, that the other portions of the trust property of Trustor is held by Trustee under the provisions hereof.

" 'Said Trustee is directed to pay to said Romie C. Jacks out of said fund the sum of Five Hundred Dollars ($500.00) per month, which said sum shall be paid for the remainder of the lifetime of said Romie C. Jacks or until said fund is exhausted.

" 'It is herein expressly declared and provided that no interest of whatsoever nature, given to Romie C. Jacks shall be subject to or subject to be taken for the payment of any debts whatsoever contracted by said Romie C. Jacks either before or after the date of this instrument, and for any purpose whatsoever, and that Romie C. Jacks shall have no power or capacity to make any disposition whatsoever of any of said income, by his assignment or by his order, voluntary

or involuntary, and whether made by the order or direction of any court or courts, whether of bankruptcy or otherwise; nor shall said interest be subject to any process of attachment issued against said Romie C. Jacks or to be taken in execution under any form of legal process directed against him or against any one connected with the trust estate, the income thereof, or any part of said income. Any interest of Romie C. Jacks in this trust is subject to the condition that he shall be without power to anticipate said income, to assign, convey, pledge, or otherwise encumber or transfer any part of said income, or any interest in said trust, and in the event of his doing any of these inhibited things, or in the event that an attempt is made to subject said income or property, or any part thereof, to the payment of any of his debts or obligations, the trustee in its sole discretion may withhold any further payment or payments to said Romie C. Jacks.

" 'Upon and at the time of the demise of said Romie C. Jacks said Romie C. Jacks trust shall *ipso facto* cease and determine, and the balance remaining in said Romie C. Jacks' Trust Fund shall go and be, by said Trustee, conveyed, transferred, and delivered to the Imperial Council of the Ancient Arabic Order of the Nobles of the Mystic Shrine for North America, to be used for the use and benefit of the Shriners' Hospital for crippled children in San Francisco, California.

" 'If in the absolute and uncontrolled discretion of said Trustee the monthly payment of Five Hundred Dollars ($500.00) shall not be sufficient to provide for the reasonable needs and comforts of my said brother Romie C. Jacks during any period or periods of his illness, or other want or necessity, said Trustee may, and it is hereby authorized and empowered, but it shall in no event be required so to do, and as often as it shall deem necessary, pay to, or use, apply or expend, for the use and the benefit of said Romie C. Jacks such portions of the principal of the trust fund created for the benefit of Romie C. Jacks up to and including the whole thereof, as said Trustee in its absolute discretion may determine to be adequate to provide for Romie C. Jacks, for the purposes aforesaid.'

"Will Jacks, the trustor, died on January 28, 1937, and the defendant, as trustee, thereafter proceeded to liquidate

the trust estate. It does not appear when the liquidation of the entire trust estate was completed but the trial court found that the period from January 28, 1937, to December 20, 1937, was a reasonable time within which defendant could accomplish liquidation. This matter becomes immaterial for the reason that on May 29, 1937, defendant created the 'Romie C. Jacks' Trust Fund' by depositing $500 therein; that in October, 1937, the balance, amounting to $24,500, was deposited therein; and the undisputed evidence shows that said sums were deposited as soon as the money was available and prior to the time found by the trial court to have been a reasonable time. Following the deposit in the trust fund of the above-mentioned $500 on May 29, 1937, defendant immediately paid that sum over to plaintiff.

"Prior to that time, the United States Board of Tax Appeals had determined that plaintiff had become indebted to the United States of America in the total sum of approximately $34,000 for unpaid income taxes and said determination had become final and conclusive. On June 5, 1937, being about seven days after the making of the above-mentioned first payment of $500 to plaintiff under the terms of said trust, there were served upon defendant a notice of levy and a distraint warrant and a similar notice was thereafter duly recorded in the office of the county recorder. Again on March 9, 1938, a similar notice of levy and distraint warrant were so served on defendant. It was stipulated and the trial court found that said acts constituted an attempt on the part of the United States of America to subject the trust fund and the interest of plaintiff therein to the payment of plaintiff's debt for unpaid income taxes and that the United States of America claimed a lien upon said fund and said interest at all times from June 5, 1937, to and including June 27, 1938.

"Defendant made no payments to plaintiff during the period last mentioned and on April 22, 1938, and prior to the expiration of said period, plaintiff commenced this action after making demand upon defendant. The United States of America thereupon filed its complaint in intervention asserting its claim of lien. On or about said June 27, 1938, plaintiff paid or caused to be paid to the United States the entire sum due from plaintiff, said payment having been made from funds other than the above-mentioned trust fund. The complaint in intervention was thereupon dismissed. Since

the time of said payment and dismissal, defendant has regularly made monthly payments to plaintiff in the sum of $500 each.

"This cause proceeded to trial, plaintiff claiming that he was entitled to judgment for all unpaid payments, commencing from the time of the trustor's death, together with interest thereon. The trial court entered its judgment in favor of plaintiff and against defendant in the sum of $8,000, together with interest on the sum of $1,500 from December 20, 1937, at the rate of 4 per cent per annum and with interest on the sum of $6,500 from June 27, 1938, at the rate of 4 per cent per annum. It was provided in the judgment that such interest should be payable from the 'individual funds and property' of defendant and not from the trust fund. It thus appears that the trial court sustained plaintiff's claim (1) that plaintiff was 'entitled to receive monthly payments from the trust commencing as of the date of the death of the trustor' and (2) that plaintiff was further 'entitled to the prescribed monthly payments maturing between the date of the levy of the distraint warrant and the time of its release.'

"It is defendant's main contention on this appeal that the trial court erred in awarding any judgment to plaintiff and our review of the record leads us to the conclusion that this contention must be sustained. A consideration of this contention divides itself logically into a discussion of the two claims of plaintiff as set forth above.

"With respect to the time of commencement, plaintiff argues that the trust instrument created a trust for the maintenance of plaintiff and provided for an annuity. Plaintiff therefore concludes that plaintiff was entitled to monthly payments from the time of the death of the trustor. The trial court so found and concluded.

"The search of able counsel has disclosed no authority directly in point on the subject under discussion. The decided cases which deal with alleged provisions for maintenance and for annuities and which might throw light upon the subject deal exclusively with testamentary provisions rather than with provisions found in instruments creating *inter vivos* trusts. ■ It is apparently conceded that section 162 of the Probate Code applies only to testamentary provisions and we believe there can be no doubt of its inapplicability here. Not only is that section found in the division of the

Probate Code entitled 'Wills' and under the chapter of that division entitled 'Legacies and Interest,' but the very wording of the section shows that its application is limited to testamentary provisions.'' ▮ Whatever may be the rule with reference to the commencement of payments to the beneficiary under a testamentary trust, that rule has no application to a trust *inter vivos*. The intention of the trustor as expressed in the declaration of trust is of paramount importance.

▮ ''Turning to the trust instrument before us, we find that it provided for what may be termed a primary trust and also provided for what may be termed a secondary trust. The primary trust was to terminate following distribution of the trust estate, which distribution was to follow the liquidation of the entire trust estate. The trustor directed that the trust estate be liquidated as soon as 'practicable and advantageous' after his death but left the exact time for liquidation to the 'absolute discretion' of the trustee. The secondary trust did not become effective until after distribution following liquidation of the trust estate in the primary trust and the trustee of the secondary trust was directed to set aside a trust fund with the money so distributed to it as trustee of the secondary trust. Out of said secondary trust fund so set aside the trustee was directed to make the payments of $500 per month to plaintiff as therein provided 'during the lifetime of said Romie C. Jacks or until said fund is exhausted.' The total sum to be so set aside was $25,000 and payments of $500 per month from said fund would normally exhaust the fund in approximately four years and two months from the time of the first payment. . . .

''The trust instrument is entirely devoid of any provision as to the time for the commencement of the payments to plaintiff but the only reasonable construction to be placed upon the language used by the trustor is that he intended such payments to commence after the secondary trust had become effective by the distribution of the secondary trust fund to the trustee of the secondary trust.

''The provisions of the trust agreement above referred to are followed by elaborate spendthrift trust provisions and we believe that the intention of the trustor is made clear by these provisions. It shows that his real intention in creating the secondary trust and providing for payments of $500 each rather than in directing the distribution of the

entire $25,000 to plaintiff himself was to protect the gift to plaintiff from the acts of plaintiff's creditors and from the acts of plaintiff himself. To this end the trustor gave broad powers to the trustee in withholding payments but provided for normal monthly payments in the sum of $500 each, which would result in plaintiff's normally receiving the entire gift within a comparatively short period of time but in comparatively small amounts. The intention to protect the gift in this manner was obviously the dominant intention of the trustor in creating the secondary trust.

"Plaintiff calls our attention to the paragraph of the trust instrument which shows that the trustee was authorized to pay over to plaintiff sums greater than $500 per month during periods of illness, want or necessity. We do not believe that said paragraph is of controlling importance. It was expressly provided that this should be in the 'absolute and uncontrolled discretion of the trustee' and that the trustee 'shall in no event be required so to do.' The making of such larger payments would have further shortened the comparatively short time required to exhaust the trust fund. . . .

"While it may be conceded that the trust instrument provided for an 'annuity,' within the broad definition of that term (3 Cyc., p. 200), it does not follow that plaintiff was entitled to monthly payments commencing as of the date of the trustor's death. . . . ▪ The time for the commencement of payments upon an annuity created by an instrument setting up an *inter vivos* trust is ordinarily at the time when such *inter vivos* trust becomes effective. . . . ▪ We believe that the only reasonable construction to place upon the trust instrument here is that the trustor intended that payments should not commence until distribution of the secondary trust fund had been made to the trustee of the secondary trust.

▪ "We turn now to a consideration of the question of whether plaintiff was entitled to judgment for the payments withheld by defendant between the time of the levy of the distraint warrant and the time of the release thereof. The discussion of this subject is simplified by plaintiff's statement that he 'does not dispute the power of the trustee to exercise its discretion to withhold payments during such time as the federal distraint warrants were in effect.' But plaintiff claims that he was entitled as a matter of right to said

withheld payments after 'the distraint warrants were lifted.' We are of the opinion that this claim cannot be sustained.

"The trust instrument provided that in the event of the plaintiff's 'doing any of these inhibited things, or in the event that an attempt is made to subject said income or property, or any part thereof, to the payment of any of his debts or obligations, the trustee in its sole discretion may withhold any further payment or payments to said Romie C. Jack.' This language appears to be clear and unambiguous. It was obviously the trustor's intention to protect the gift from either attempts by plaintiff to anticipate the payments or attempts by plaintiff's creditors to subject such payments to the satisfaction of their claims. To that end, the trustor gave to the trustee the sole discretion 'to withhold any further payment or payments' in the event any such attempt might be made. It was stipulated that such an attempt was made.

"While the word 'withhold' may sometimes be used to connote a mere temporary holding back as contended by plaintiff, it is probably more frequently used to connote a permanent retention or refraining 'from granting, giving, allowing, or the like.' (See Webster's New Inter. Dict., 2d ed.) A consideration of all of the terms creating the trust here compels the conclusion that the trustor intended to use the word 'withhold' in the latter sense. We are dealing here with a typical spendthrift trust and the obvious purpose of the trustor in creating such a trust would be defeated by a construction which would permit the accumulation of the prescribed payments and the distribution of a large lump sum to the beneficiary at any one time.

"In view of the conclusions which we have reached, it becomes unnecessary to discuss the question of the right of plaintiff to interest as that right, if any would have existed, was dependent upon his right to judgment for some of the payments claimed by him."

The judgment is reversed.

Edmonds, J., did not participate herein.