## CRUTCHER et al. v. JOYCE et al.
### No. 2612.

Circuit Court of Appeals, Tenth Circuit.
March 16, 1943.

Rehearing Denied April 21, 1943.

812

J. M. Hervey, of Roswell, N. M., and James W. Crutcher, of Nashville, Tenn. (Jack P. White, of Nashville, Tenn., and Hervey, Dow, Hill & Hinkle, of Roswell, N. M., on the brief), for appellants.

George L. Reese, Jr., of Carlsbad, N. M. (James W. Stagner, of Carlsbad, N. M., on the brief), for appellees J. F. Joyce et al.

Caswell S. Neal, of Carlsbad, N. M., for appellee Ella Joyce.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

This case bears the label of a family controversy. Mattie Joyce Crutcher, Docia Joyce White, and James W. Crutcher, only child of Mattie Joyce Crutcher, were plaintiffs in the court below; and J. F. Joyce, individually and as trustee for Mattie Joyce Crutcher, Docia Joyce White, and James W. Crutcher, Ella Joyce, J. F. Joyce as trustee for Ella Joyce, the children of J. F. Joyce and their respective spouses, and National Livestock Company, a corporation controlled by J. F. Joyce, were defendants. Reference will be made to Mattie Joyce Crutcher as Mattie, Docia Joyce White as Docia, Ella Joyce as Ella, and Mary Joyce Cox—not a party—as Mary.

The complaint was quite voluminous, covering more than sixty pages in the record. It alleged these facts. John R. Joyce and J. A. Joyce were brothers. The former resided at Carlsbad, New Mexico, amassed a fortune there, and died in 1916. The latter resided in Tennessee, and died in 1932. He had one son and four daughters, J. F. Joyce, Mattie, Docia, Ella, and Mary. J. F. Joyce came to New Mexico, became associated with John R. Joyce in business, and was a co-administrator of his estate. J. A. Joyce inherited a substantial sum from his deceased brother, and thereafter placed substantially all of it in the hands of his son J. F. Joyce, as agent, to be invested and administered. In the early part of 1920, the father indicated a desire to divide a large part of his property among his children, excluding Ella. He was then about seventy-six years of age, virtually blind, and otherwise infirm; and J. F. Joyce was about fifty, Docia about forty-seven, Mattie about forty-five, and James W. Crutcher about twelve years of age, respectively. J. F. Joyce advised his father that the funds were invested but that he would attempt to carry out his wishes. He evaluated the properties of his father at $183,732.08, and he and Mary received their shares. The shares of Mattie and Docia were placed in separate trusts. J. F. Joyce was named trustee in each instance. In the case of Mattie, the corpus of the trust estate consisted of a promissory note in the sum of $38,433.02, signed by Tilden A. Joyce, wife of J. F. Joyce; and in the case of Docia the corpus of the trust estate consisted of two notes, one for $36,666.68, signed by Tilden A. Joyce, and the other for $1,766.34, signed by J. F. Joyce.

An estrangement existed between J. A Joyce and Ella, but they became reconciled; and in 1922, he decided to make provision for her. He accordingly demanded that the four other children each contribute $5,000 to be placed in a trust fund for her benefit. Instead of making such contribution to the trust, Mary paid the amount direct to her sister. The three remaining children each contributed the required sum which became the subject matter of the trust. No money passed, the transaction being handled by J. F. Joyce charging Mattie and Docia each on the books with $5,000 and crediting the Ella trust with $15,000. J. F. Joyce was named trustee for Ella also. In 1927, the father decided to make further provision for Ella and called on the other four children each to contribute an additional sum of $3,412.50. Mary delivered to J. F. Joyce certain shares of stock as her contribution, and the contributions by Mattie and Docia were effected by debit and credit entries in the books of the trust estates. J. A. Joyce executed a trust instrument reciting that he had placed with J. F. Joyce as trustee for the benefit of Ella four described notes aggregating more than $29,000, three signed by Tilden A. Joyce and one by J. F. Joyce, and the stock which Mary had contributed; and J. A. Joyce, by Docia, J. F. Joyce, Mattie, Docia, and Ella executed a separate instrument reciting that the instrument creating the first trust for Ella be cancelled

and the second substituted for it, directing that the trustee make the proper charges in the trust accounts to effect the transfer of the additional sums, and approving his acts in making the transfers. The first trust for Ella provided that if she should die without issue, the trust should be immediately closed and the fund divided equally among those creating it, and if she should die with issue the fund should become the property of the issue. Strikingly different, the second provided that in the event of the death of Ella before that of her father, the trust should continue in force during the joint lives of the settlor and the trustee, with the net income to the settlor for his support and maintenance, and in the event of the death of the settlor before that of the trustee, the entire fund should vest in J. F. Joyce absolutely; and that in the event of the death of the settlor before that of Ella and the trustee, the trust should remain in force so long as they both should live, and then if Ella should die first, the fund should vest in J. F. Joyce absolutely. J. F. Joyce prepared all of the several trust instruments, and the settlor executed them in Tennessee.

J. F. Joyce failed to account for all the property which he received from the estate of his uncle, failed to account for all the money and property which his father entrusted to him as agent, and mismanaged the trust estates of Mattie and Docia; as the result of such mismanagement and breaches of trust, he and the other defendants profited; and they received and hold property in which plaintiffs have an interest. Broadly stated, the relief sought was an accounting and the imposition of an equitable trust on such property.

On motion of the defendants, the court dismissed the causes of action insofar as they were asserted by plaintiff James W. Crutcher; dismissed the complaint as to the defendants Ella and J. F. Joyce as trustee for Ella, insofar as it sought to attack or reform the trust for her benefit; struck from the complaint all allegations relating to transactions antedating the creation of the several trusts; and ordered the filing of an amended complaint with the stricken allegations omitted. The appeal was from that order. The amended complaint was filed and the case stands on the docket of the court below for trial on all the issues tendered, except those eliminated by the order.

The jurisdiction of this court is questioned on the ground that the order is not one from which an appeal will lie. With certain exceptions not pertinent here, our jurisdiction is limited to review by appeal of final decisions. Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478; Hunt v. United States, 10 Cir., 53 F.2d 333; Dye v. Farm Mortgage Investment Co., 10 Cir., 70 F.2d 514; Demulso Corporation v. Tretolite Co., 10 Cir., 74 F.2d 805. But Rule of Civil Procedure 42(b), 28 U.S.C.A. following section 723c, provides that the court may in furtherance of convenience order a separate trial of any claim or separate issue, or of any number of claims or issues; and Rule 54(b) provides in substance that where more than one claim for relief is presented, the court may determine the issues material to a particular claim and enter a separate judgment disposing of it, and that the action shall proceed as to the remaining claims. Plaintiff James W. Crutcher asserted that he had a beneficial interest in the Crutcher trust and was therefore a proper party plaintiff. Whether he had such an interest was an issue separate and distinct from all other issues in the case. The court determined that issue, holding that he had no such interest; and the order dismissing the action as to him completely determined and adjudicated his asserted rights against all defendants. Such an order is a final decision for purposes of appeal. Reeves v. Beardall, supra.

Similarly, the cause of action against Ella and J. F. Joyce as trustee for her, relating to the trusts for her benefit, was entirely separate and distinct from the other causes of action alleged in the complaint. And the causes of action based on the alleged failure of J. F. Joyce to account for property belonging to the estate of his uncle, and that for his failure to account for money and property which his father entrusted to him as agent, were completely unrelated to the other causes pleaded. The provision in the order of dismissal relating to the cause of action against Ella and J. F. Joyce as trustee for her merely dismissed the complaint—not the action; and the provision relating to the causes of action for failure to account for the money received from the estate and for failure to account for that received as agent merely provided that all allegations in respect of transactions antedating the creation of the various trusts be stricken. Ordinarily an

order dismissing a complaint in whole or in part, not followed by an express election of plaintiff to stand on the pleading and then an order dismissing the action, is non-appealable. Missouri & Kansas Interurban Ry. Co. v. City of Olathe, 222 U.S. 185, 32 S.Ct. 46, 56 L.Ed. 155; Dyar v. Mc-Candless, 8 Cir., 33 F.2d 578; Riverside Oil & Refining Co. v. Dudley, 8 Cir., 33 F.2d 749. Where a demurrer or motion to dismiss the complaint is sustained and the complaint dismissed in whole or in part, and plaintiff does not desire to amend, he should announce his election to stand on his pleading, let a final order or judgment be entered dismissing the action, and then appeal from that order or judgment. Dye v. Farm Mortgage Investment Co., supra. But the provisions in question are part of an order which completely determined the rights of one plaintiff and dismissed the entire action as to him; and they were plainly intended by the trial court to be and constitute a final order of adjudication, dismissing in like manner the action as to these causes, not merely parts or all of the complaint. We too shall treat them in that manner. Cf. Riverside Oil & Refining Co. v. Dudley, supra.

██ Coming to the merits, the elimination of plaintiff James W. Crutcher from the action is challenged. It is contended that he took and has a vested beneficial interest in the Crutcher trust; that such interest is that of remainder; and that he is a proper party plaintiff. The cardinal rule in Tennessee and elsewhere for determining the rights of parties in a trust estate of this kind is to ascertain and effectuate the intention of the settlor of the trust, if not repugnant to law or public policy; and that intention is to be ascertained from the instrument as a whole, considered in the light of the surrounding and attending circumstances. The entire instrument is to be considered. All of the language must be weighed, and some meaning given to each part, provision, and expression, consistent with the rest thereof, if that can be done. And where the instrument contains ambiguous expressions, or doubtful or conflicting provisions, the situation of the parties may appropriately be taken into consideration. The ties which connected the settlor with the recipient of his bounty, the affection existing between them, the generating motive which may be supposed to have existed with him and to have influenced him in making the disposition of his property,

are all entitled to consideration in ascertaining the meaning with which he used them. Dalton v. Eller, 153 Tenn. 418, 284 S.W. 68; Manhattan Savings Bank & Trust Co. v. Bedford, 161 Tenn. 187, 30 S. W.2d 227; Williams v. Williams, 167 Tenn. 26, 65 S.W.2d 561; Crow v. Crow, Ill.Sup., 180 N.E. 877; Gorey v. Guarente, 303 Mass. 569, 22 N.E.2d 99; State Street Trust Co. v. Crocker, 306 Mass. 257, 28 N.E.2d 5, 128 A.L.R. 1166; Keck v. McKinstry, 206 Iowa 1121, 221 N.W. 851; Roats v. Roats, 258 N.W. 264, 128 Neb. 194; First National Bank v. Barnes, 237 Wis. 627, 298 N.W. 215, 136 A.L.R. 62; In re Watland, Minn., 300 N.W. 195; Buist v. Williams, 88 S.C. 252,.70 S.E. 817; Wallace v. Wallace, 168 Va. 210, 190 S.E. 293; Title Insurance & Trust Co. v. Duffill, 191 Cal. 629, 218 P. 14; Jacks v. Monterey County Trust & Savings Bank, 20 Cal.2d 494, 127 P.2d 532; Dunnett v. First National Bank & Trust Co., 184 Okl. 82, 85 P.2d 281; Krause v. Jeannette Inv. Co., 333 Mo. 509, 62 S.W.2d 890; New York Life Ins. Co. v. Conrad, 269 Ky. 359, 107 S.W.2d 248.

██ It is settled law in Tennessee that if the first taker under a will or trust instrument of this kind is given an estate in fee, or for life, coupled with an unlimited power of disposition, the fee or absolute estate vests in the first taker, and the limitation over is void; but if the power is dependent upon a contingency, or is definitely qualified, the estate of the first taker is limited to life, and the remainder over takes effect. Magevney v. Karsch, 167 Tenn. 32, 65 S.W.2d 562, 92 A.L.R. 343; Mauk v. Irwin, 175 Tenn. 443, 445, 135 S.W.2d 922.

This trust indenture was in the form of a letter from the settlor to the trustee. Omitting a provision not pertinent here, it provided:

"I hand you, herewith, the following described note, to-wit: One note for Thirty-eight Thousand four Hundred Thirty-three and 02/100 ($38,433.02) Dollars signed by Tilden A. Joyce due on or before 10 years after date, dated May 21, 1920, payable to J. A. Joyce, with interest from date at the rate of six per cent per annum, interest payable semiannually on January 1 and July 1 of each year and by him endorsed. You are to receive this in behalf of and for the benefit of my daughter Mattie Joyce Crutcher, for whom I desire you to act as trustee. This trust fund is to be administered by you for the sole benefit of my daughter and her family and you are to pay her the interest

on said fund as it accrues should she so desire. You are constituted as trustee and in the event that the income from this fund is not sufficient for the support, maintenance and education of the family of my daughter Mattie Joyce Crutcher, from time to time you are authorized to pay her on the principal such amounts as may be necessary for the purposes set forth. But out of the trust fund hereby created you are to deduct on the 1st day of January and the 1st day of July of each year, so long as I live, the further sum of $100.00 and in the event my actual expenses are more than four times the amount withheld then you are to deduct in addition, one fourth of the excess. * * * The trust fund that I am creating is a gift to my daughter and it is made subject to the right to withhold the amounts as herein set forth. You are authorized and directed to deliver to my daughter Mattie Joyce Crutcher the said note at any time when in your judgment her business experience and training are sufficient to warrant the belief that it is to her own best interest to manage the fund herself, you to be the sole judge in the premises. Should she die while you are still administering the trust fund you are authorized and directed to pay same to her children."

It is to be observed that immediately following the description of the note the settlor straightway provided that the trustee should receive it in behalf of and for the benefit of Mattie, and that he was to act as trustee for her. That was a clear statement of an intent to create a trust "in behalf of and for the benefit of my daughter." It was a further statement of desire that the trustee should act as trustee for her. There was no direct or indirect reference to James W. Crutcher or any one else as having a present beneficial interest in the trust property, as remainder or otherwise. And the instrument subsequently provided that the trust fund should be and constitute "a gift to my daughter". That likewise was an apt and direct statement of his intention—to make a gift to the daughter. Again nothing whatever was said directly or by implication in respect of any third person having any beneficial interest in the property, as remainder or elsewise. Furthermore, that was followed immediately by a direction that the trustee deliver the note to the daughter when in his opinion her business experience and training were sufficient to warrant the belief on his part that it was to her own best interest to manage

the fund herself. That provision too was utterly barren of any indication of an intent or purpose to vest in a third person any present beneficial estate in the trust property. These provisions were in essence dominant and controlling statements of an intent and purpose of the creator of the trust to make a gift to his daughter. Nothing was said in respect to the property being given to her for life or that she should have in it only a life estate or life interest. No expression of that kind is to be found in the instrument.

The instrument further provided that the trustee should administer the fund for the sole benefit of Mattie and her family, and that in the event the income should be insufficient for the support, maintenance, and education of her family sums necessary therefor should be paid her out of the principal. But that provision merely indicated a motive for the making of the gift or the establishment of the trust. Wilmoth v. Wilmoth, 34 W.Va. 426, 12 S.E. 731; Stace v. Bumgardner, 89 Va. 418, 16 S.E. 252; Fackler v. Berry, 93 Va. 565, 25 S.E. 887; Tyack v. Berkeley, 100 Va. 296, 40 S.E. 904, 93 Am.St.Rep. 963; Whitridge v. Williams, 71 Md. 105, 17 A. 938, 17 Am.St. Rep. 513; Appeal of Hippenstall, 144 Pa. 259, 22 A. 860; Lloyd v. Lloyd, 173 Mass. 97, 53 N.E. 148; Bulfer v. Willigrod, 71 Iowa 620, 33 N.W. 136; Evans v. Ockershausen, 69 App.D.C. 285, 100 F.2d 695, 128 A.L.R. 177, certiorari denied, 306 U.S. 633, 59 S.Ct. 462, 83 L.Ed. 1034.

And the indenture also provided that in the event of the death of Mattie while the trustee was still administering the trust fund, he should pay it to her children. That provision is relied upon as vesting in plaintiff James W. Crutcher a present estate. The word "children" is generally construed as one of purchase, unless the instrument as a whole indicates an intention to use it in some other sense. Collins v. Williams, 98 Tenn. 525, 41 S.W. 1056; Brown v. Boone, 129 Kan. 786, 284 P. 436. On the contrary, the word "heirs" in its strict and technical sense applies to persons appointed by law to succeed to the estate in case of intestacy; but it is frequently used to designate those persons who answer this description at the death of a testator. Ordinarily it is a word of limitation. But oftentimes the two words are used synonymously or interchangeably in common speech, in conveyances, in wills, and in other instruments containing trust provision. Durfee v. Mac-

Neil, 58 Ohio St. 238, 50 N.E. 721; Strickland v. Delta Inv. Co., 163 Miss. 772, 137 So. 734; Denney v. Crabtree, 194 Ky. 185, 238 S.W. 398; Bentley v. Consolidated Coal Co., 209 Ky. 63, 272 S.W. 48; Powell v. Hayes, 176 Ark. 660, 3 S.W.2d 974.

█ In earlier provisions the settlor had already stated in apt language that the property was a gift to his daughter, and had provided that the trustee should receive it in her behalf and for her benefit. In addition, he had authorized and directed the trustee to deliver the note or the proceeds to her when in his opinion it was to her own best interest to manage the fund herself; and that provision did not contain any express limitation or restrictions upon her use of the fund or property after it had been delivered to her, either as to purpose or amount. Then followed the provision relating to payment to the children. It finds itself at the very conclusion of the instrument, following all of the earlier statements and provisions. The daughter of the settlor had only one child, and yet it was provided that the money be paid to her children. Moreover, in the event the trustee should deliver the corpus of the trust to Mattie under the immediately preceding provision expressly authorizing and directing him to do so as and when in his judgment it had become to her best interest to manage the fund herself, the trust would thereupon terminate, and nothing whatever would ever be paid or delivered to James W. Crutcher under this provision. Considering the instrument as a whole, the clear intent and purpose indicated in the preceding provisions, the position of this provision in the context, and the language itself of the provision, it seems plain that it was never intended as one of purchase vesting in the child any present interest or estate in the property; and it is not to be altered by judicial construction.

█ This brings us to the cause of action pleaded against Ella and J. F. Joyce as trustee for her. The trust instruments creating the respective trusts for the benefit of Mattie and Docia failed to contain any provision authorizing the settlor to revoke or modify them. A completed trust without reservation of power of revocation or modification cannot be revoked in toto or modified by reducing the estate of the cestuis que trust, without their consent. In the absence of an expressly authorizing provision, or unless such a provision was omitted by mistake, the settlor has no power either to revoke the trust or modify it by reducing the interest of the beneficiaries, except with their consent. 1 Perry, Trusts and Trustees § 104; 2 Restatement, Trusts §§ 330, 331; 3 Scott, Trusts §§ 329A, 330, 331, 340.

█ A trustee is vested with the powers which are specifically conferred by the terms of the trust, and those which are reasonably necessary and appropriate for the carrying out of the purposes of the trust and are not forbidden by it. 1 Restatement, Trusts § 186; 2 Scott, Trusts § 186. The provisions of a trust fixing the mode, the time, and the conditions for the execution of the powers are exclusive of others, if not forbidden by law or public policy. Where a trustee transfers property to a third person in breach of trust, he is liable in damages to the cestui que trust. And where the transfer is made without value, the transferee can be compelled to restore the property to the trust if he has not disposed of it, and if he has made disposition of it to account for the proceeds. 2 Restatement, Trusts §§ 289, 290, 291.

██ As previously said, the instruments creating the trusts for the benefit of Mattie and Docia each authorized the trustee in his own discretion to deliver any part or all of the corpus of the trust property to the beneficiary when he believed or had reason to believe that the beneficiary could and would use such property for her benefit or best interest. And if the amounts in question had been paid to them under that provision and they had delivered it to their sister to be placed in the trust fund for her benefit, perhaps there would be no liability. But that was not done. Instead the trustee took the money from their trusts and placed it in that of Ella. Mattie and Docia gave their consent in each instance. But it was alleged that the father demanded that they contribute to the fund to be used in establishing and later increasing the trust for the benefit of their sister; that they understood and believed that the funds previously placed in trust for them still belonged to their father; that they understood that the principal which they contributed would revert to them when no longer needed for the support of their sister; that they were inexperienced in business and financial affairs, investments, and legal rights and responsibilities; that they placed implicit confidence in their brother; that he failed to advise them as to their rights; that they had no independent ad-

vice; that they and their father did not understand the true legal effect of the instruments; that in such circumstances they consented to the demands of their father, brother, and sister; that Mattie gave her consent reluctantly; and that Docia consented but was mentally incompetent to give any valid consent. The complaint contained other allegations of like import but it is not necessary to detail them at length. In addition, within a few days after entry of the order of dismissal, plaintiffs moved for leave to file an amendment to their complaint and tendered such amendment in which it was alleged that in 1914 Docia suffered a nervous breakdown; and that at the time she gave her consent to the transfers from her trust fund to that of her sister, she was mentally incompetent and was incapable of making a valid gift or of understanding a transaction of that kind. Of course, if Mattie and Docia gave their valid consent to the transfers from their trust funds they cannot recover. But they are not precluded by such consent if their brother, in whom they resposed implicit confidence and who was their fiduciary, failed to make disclosure of the material facts, or if they were overreached or were the victims of fraud; and Docia is not foreclosed if she was mentally incompetent at the time her consent was given. 1 Perry, Trusts and Trustees § 467; 1 Restatement, Trusts § 216; 2 Scott, Trusts § 216. We think that the pleading stated a cause of action against Ella and J. F. Joyce as trustee for her, and further that the court in the exercise of its discretion should have granted the requested leave to amend.

 The remaining question is whether the court providently struck the so-called allegations antedating the trust instrument. By such allegations it was sought to state causes of action against J. F. Joyce for failure to account for property belonging to the estate of his uncle and for failure to account for money and property which his father entrusted to him. The first of these choses in action belonged to the estate of the uncle, to be enforced by the personal representative thereof. There were no allegations in the complaint in respect of the status of the probate proceedings, whether still pending or closed. It is fair to assume that they have been closed. If so, and Mattie and Docia were entitled to maintain the action as heirs at law of their deceased uncle, all other heirs having like or other nonseverable interests were indispensable parties. Their sister Mary had such an interest, was an indispensable party, and was not joined; and so far as appears from the complaint, there may have been other nieces, nephews, or other kinsmen of the deceased, who had nonseverable interests, were indispensable parties, and were not joined. That was enough to call for dismissal of the action. Baird v. Peoples Bank & Trust Co., 120 F. 2d 1001, 136 A.L.R. 693. The other chose in action—for failure to account for the money and property entrusted to him as agent—belonged to the estate of the father, to be enforced by the personal representative thereof. As we understand from the complaint the father left a will but it has not been offered for probate and no probate proceedings have been had respecting his estate. Accordingly, if Mattie and Docia were entitled to sue as heirs at law of their father, their sister Mary was an indispensable party, and her absence required dismissal. Baird v. Peoples Bank & Trust Co., supra.

That part of the order dismissing the action against Ella and J. F. Joyce as trustee for her is reversed; in all other respects the order is affirmed; and the cause is remanded.